LEWIS, ET AL., PLAINTIFFS, STARLIN, ET AL., APPELLANTS.
*v.* PETERSON, ET AL., RESPONDENTS.

No. 9228.

Submitted January 5, 1954. Decided February 25, 1954.

267 Pac. (2d) 127.

Mr. Raymond F. Gray, Ronan, for appellants.

Mr. F. N. Hamman, Polson, for respondents.

Mr. Gray and Mr. Hamman argued orally.

MR. JUSTICE FREEBOURN:

This action was tried by the district judge sitting without a jury, the same being waived by the parties, as between Russell Starlin, appellant, and R. C. Peterson, respondent. The issues

were made and framed by an amended cross-complaint of appellant, the answer thereto of respondent, and appellant's reply to such answer. Judgment was rendered in favor of Starlin and against Peterson for $207. Dissatisfied with the amount allowed him, Starlin appealed.

It is alleged in Starlin's amended cross-complaint that Starlin was declared by the district court to be incompetent on April 25, 1950, and restored to competency on October 17, 1950, and that on September 8, 1949, Peterson secured a check from Starlin for $1,000 for which Peterson did not give any consideration to Starlin. Further that Peterson "took and carried away" three hundred bushels of grain belonging to Starlin of the value of $207 and that Starlin's demands that the check be returned and the grain paid for have been refused by Peterson.

Peterson's answer to the amended cross-complaint admits he received the $1,000 check and asserts it was the down payment on a purchase of land under an oral agreement which Starlin "failed and refused" to carry out. Peterson also admits receiving 6,670 pounds of grain (oats) allegedly at a price of $2.35 per hundred pounds (total value $156.74) and he deposited the sum of $156.74 in court as and for the price of such oats.

It seems clear from the testimony of Peterson and a real estate man, Higgenbotham, who handled the deal, although Starlin contends he remembers nothing about it, that on September 8, 1949, by oral agreement, Starlin and Peterson entered into a deal whereby Peterson sold Starlin certain land for the price of $4,500, of which price $1,000, evidenced by the check in question, signed by Starlin, and dated September 8, 1949, was paid down and the balance of $3,500 was to be paid at the rate of $500 a year. A written contract was to have been entered into the following week covering the transaction. Such contract was never entered into and there was evidence to the effect that failure to do so was because of Starlin's refusal so to do.

Starlin contends that he is entitled to the return of the $1,000, evidenced by the check dated September 8, 1949, and paid under such oral agreement to sell and buy said lands, because such

agreement was not in writing and therefore invalid. For the same reason he contends it was error not to sustain his demurrer to Peterson's answer and to permit, over his objection, evidence of such oral agreement to go into the record and be considered by the trial court.

It is Starlin's position that the oral agreement under which the $1,000 was paid is invalid because no note or memorandum in writing was signed by him, as required by R. C. M. 1947, secs. 13-606, 74-203 and 93-1401-7. These sections provide that agreements for the sale of real property are invalid unless some note or memorandum thereof be in writing, and subscribed by the party charged or by his agent.

The $1,000 check is an ordinary filled in, signed and endorsed ▌ bank check with the additional words "payment land" written upon it. It is insufficient to constitute the written "note or memorandum" required by the sections of the statutes cited above for it does not contain all the essentials of the agreement between Starlin and Peterson, thereby necessitating resort to oral evidence to prove such essentials, and the oral agreement made between Starlin and Peterson is, therefore, unenforceable. Dineen v. Sullivan, 123 Mont. 195, 213 Pac. (2d) 241.

This action, however, is not one which seeks to enforce such oral agreement. It is an action to recover an advance, down, or partial payment of money made upon the total purchase price of the land under an oral or parol agreement, after failure on the part of the purchaser to follow out the terms of such oral agreement. Peterson, therefore, had the right to set up and disclose what the facts surrounding such payment actually were, as a defense to Starlin's claim, and the trial court properly overruled the demurrer to his answer alleging such facts and the objections to evidence showing such facts. Perkins v. Allnut, 47 Mont. 13, 130 Pac. 1; Arnold v. Genzberger, 96 Mont. 358, 31 Pac. (2d) 296.

Then too, R. C. M. 1947, sec. 13-713, provides: "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

The policy of the law is to compel parties to live up to their agreements and not to encourage them in their violation, and one who makes an advance or down payment, under an oral or parol agreement, upon the purchase price of real property, and then fails to live up to such agreement, unless he can show facts and circumstances upon which, in equity and good conscience, he should have relief from consequences of his own default, cannot recover back such advance or down payment. Cook-Reynolds Co. v. Chipman, 47 Mont. 289, 133 Pac. 694; Clifton v. Willson, 47 Mont. 305, 132 Pac. 424; Fratt v. Daniels-Jones Co., 47 Mont. 487, 133 Pac. 700; Suburban Homes Co. v. North, 50 Mont. 108, 145 Pac. 2.

The law as set forth in the cases cited applies with the same vigor to contracts involving the sale of personal property and the sale of real property. Ellinghouse v. Hansen Packing Co., 66 Mont. 444, 213 Pac. 1087, 1088, where this court said: "The rule applies to contracts generally and the obvious reason for its existence is that it is the policy of the law to foster the observance of contracts, and not to offer a premium for their violation."

All of which leads up to the question: Can it be said from the evidence that Starlin has brought himself under the exception to the general rule that one, who has been guilty of a breach of his contract by stopping short of full performance, cannot ordinarily recover payments made prior to the breach?

This exception exists when from the evidence such a showing is made as would appeal to the conscience of a court of equity, and which in equity and good conscience entitle the defaulting purchaser to the return of payments made or some part thereof.

R. C. M. 1947, sec. 17-102, provides: "Relief in case of forfeiture. Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty."

In construing the words of the above statute, this court in Estabrook v. Sonstelie, 86 Mont. 435, 284 Pac. 147, 149, said: "* * * this court in the above-cited cases has placed a more liberal interpretation upon the statute and has announced the rule that a person may obtain relief under it in any case where he sets forth facts which appeal to the conscience of a court of equity."

The evidence here, shows that the oral agreement and check for $1,000 were made on September 8, 1949. It was admitted by counsel for Peterson, and alleged in the amended cross-complaint, that Russell Starlin was declared an incompetent, by the district court, about April 25, 1950.

Although it was not alleged nor was any attempt made to show Starlin was incompetent at the time the check was made and signed, it appears from the evidence that such incompetency was due to existing mental sickness which resulted from a series of incidents occurring over a period of time prior to September 8, 1949, namely: he saw his first wife burn to death; he had a mental breakdown which put him in a Denver hospital for six weeks; he was struck by lightning; an 8,000 gallon tank of gas hit him and smashed his combine; he lost 25 head of cattle in a big storm; and "got hailed out * * * Everything felt like I was on air * * * I just couldn't take any more."

A reading of Starlin's testimony given while on the witness stand leads the reader to the conclusion that he lacked control and was upset mentally at the time of trial. An incident tending to show this occurred in his direct examination when, while being examined by his counsel, opposing counsel made an objection to a question asked. Starlin, speaking to opposing counsel, said: "If you had as many—keep your mouth shut!—If you had as many accidents as I had— Mr. Gray: Just a minute, Russell. A. Okay, I am sorry. * * * I am still unhappy. I am a happy guy."

There is also evidence to the effect that although Starlin, as late as November 1949, had refused to sign a written contract covering the purchase of the land, in December 1950, he went to

Peterson and wanted to enter into such a contract, but Peterson refused to do so. The evidence shows that Starlin never took possession of the property and the only damage suffered by Peterson was in the amount of $225 which Peterson paid Higgenbotham as a five percent commission for making the sale. Higgenbotham had known Starlin all his life and knew of all the mishaps Starlin had suffered and was in a position to know of his mental condition.

The only evidence in the record showing the amount and value of the oats taken by Peterson shows the amount to be 6,670 pounds and its value to be $2.35 per hundred pounds. Computed, the total value of the oats taken is $156.74, the amount deposited in court by Peterson.

Under the evidence, the circumstances here shown, and in equity and good conscience, Starlin is entitled to the return of the $1,000 which he paid as a down payment under the oral agreement to buy the land, as evidenced by the check. Starlin is further entitled to $156.74 as and for the oats Peterson received; while Peterson is entitled to credit for the $225 which he paid to Higgenbotham as commission for making the sale. The final result being that Starlin should have a money judgment of $931.74 as against Peterson.

For the reasons stated the judgment is reversed and the cause remanded to the district court with directions to enter judgment for Starlin and against Peterson in the amount of $931.74, and costs.

MR. JUSTICE BOTTOMLY, concurs.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE ANDERSON:

We concur in the result but not in all that is said in the foregoing opinion.

MR. JUSTICE ANGSTMAN: (specially concurring).

I concur in the result but not with all that is said in the foregoing opinion.

The cases of Cook-Reynolds Co. v. Chipman, Clifton v. Willson, Fratt v. Daniels-Jones Co., and Suburban Homes Co. v. North, all cited in the majority opinion in support of the statement that one who makes a down payment under an oral or parol agreement on the purchase price of real property cannot recover it back unless facts and circumstances are shown which appeal to equity and good conscience, are all cases having to do with written contracts, and in such cases the rule declared is proper. In other words, the rule is proper where there exists a provable contract. None of them have to do with an oral agreement such as we have here.

The case of Perkins v. Allnut, 47 Mont. 13, 130 Pac. 1, supports the statement made in the majority opinion, but I do not agree with that case. The effect of that case is to permit defendant to rely upon the oral agreement to defeat plaintiff's recovery of the so-called down payment without giving plaintiff the corresponding right to enforce the so-called oral contract against defendant. Such an arrangement lacks mutuality of obligation and remedy. Compare Brown v. Pollard, 89 Va. 696, 17 S. E. 6. The rule declared and applied in the Allnut case permits defendant to defeat the purpose of the Statute of Frauds. To say that defendant by setting up the oral agreement is not thereby seeking to enforce it is a play upon words. To the extent of claiming the right to retain the $1,000 defendant is seeking to enforce the oral agreement. The oral agreement becomes the foundation for his claim. He relies upon a defense which he cannot prove, i. e., that there was a sale of real estate and a down payment on such a sale. The Statute of Frauds prevents the proving of such an agreement except by a writing.

Our statute not only says that an oral agreement for the sale of real estate is invalid, R. C. M. 1947, secs. 13-606, 74-203 and 93-1401-7, but it is expressly provided that "evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents". R. C. M. 1947, sec. 93-1401-7. "Therefore the contract cannot be relied upon or furnish evi-

dence for any purpose.'' Dreidlein v. Manger, 69 Mont. 155, 220 Pac. 1107, 1109.

It should be noted that plaintiff did not take possession of the land and no contention is made and no proof was offered that there was such part performance of the so-called sale as to dispense with the necessity of a writing.

I realize that there are many cases in other jurisdictions that follow the general rule announced in Perkins v. Allnut. They are cited in the note in 169 A. L. R. 188, but in most of those cases the vendee conceded that he was the vendee of land under an oral contract. Here the plaintiff denies that he was such. The only way in which defendant attempts to prove it is by oral testimony which the statute says may not be received in evidence. Likewise in many of those case the statutory provisions were different from those in this state.

There are too, many cases taking a contrary view. They are cited in the note on page 192 of 169 A. L. R. One of the leading cases, among others refusing to follow the rule in Perkins v. Allnut, is that of Reedy v. Ebsen, 60 S. D. 1, 242 N. W. 592, Id., 61 S. D. 54, 245 N. W. 908.

I think plaintiff is entitled to recover because there was no consideration for the $1,000 which respondent obtained from him. Eccles v. Kendrick, 80 Mont. 120, 259 Pac. 609; Durkin v. Machesky, 177 Wis. 595, 188 N. W. 97; Reedy v. Ebsen, supra.