JOHN JUNIOR HUGHES, Plaintiff and Appellant, v. R. M. MELBY and ELI MELBY, his wife, and WILLIAM MELBY, Defendants and Respondents.

No. 9638.

Submitted March 19, 1958. Decided July 16, 1958.

On Rehearing June 4, 1959. Rehearing Denied June 24, 1959.

416

MR. JUSTICE ADAIR dissented on main opinion and MR. JUSTICE BOTTOMLY dissented on rehearing.

H. Leonard DeKalk, Raymond Dockery, Jr., Lewistown, for appellant.

H. Leonard DeKalk, Lewistown, argued orally.

Anderson & Sorenson, Ralph J. Anderson, Helena, Brown, Sande, Symmes & Forbes, Billings, for respondents.

Ralph J. Anderson, Helena, argued orally.

MR. JUSTICE ANGSTMAN:

This is an action for specific performance of an alleged contract for the purchase by plaintiff, John Junior Hughes, from defendants, R. M. and Eli Melby, of certain described real estate situated in Petroleum County and for damages for the refusal of the defendants to surrender possession of the property. The action was tried to the court sitting without a jury resulting in findings of fact and conclusions of law in favor of the defendants. Plaintiff has appealed from the judgment.

The facts are these: On September 24, 1953, defendants, R. M. Melby and Eli Melby, his wife, signed an agreement employing E. F. Carnell as their agent to sell the property. The agreement was as follows:

"I hereby appoint E. F. Carnell of Lewistown, Montana, whose office is located in said City and State, my agent with the exclusive right to sell the following property:

"My ranch property on Flat-willow T. 12 N-R. 26 E, Petroleum County, Mont. (3560 acres more or less.)

"For the sum of $105,000—including 5 stacks of hay on Pike Creek. Conditions and terms of the sale are as follows:

"29% Cash—bal. 10 annual p'm'ts. 5% int. by Nov. 15th, possession of land April 1—1954—seller reserve ½ land-owner's Royalty. Transfer all water rights & grazing rights in District. Seller pay 1953 taxes.

"And I agree to furnish a title as outlined in the following paragraph A.

"A. An abstract of title showing a good merchantable title to said property together with a warranty deed properly executed.

\* \* \* \* \* \* \*

"Said sale may be made for a less amount if hereafter authorized by me; you are further authorized to receive a deposit on the sale price. I agree to pay a commission of $5,000—on the sale price and the commission shall be payable as soon as the

sale is made and a down payment has been made, or sale price paid in full at the time of sale, and, or as soon as a binder fee has been collected on the sale, which ever be first.

"This authorization is to remain in effect and full force for 10 days * * *

"Dated at Lewistown, Montana this 24 day of Sept — 1953—

"/s/ R. M. Melby
"/s/ Eli M. Melby"

Carnell immediately thereafter contacted plaintiff and induced him to buy the property. The plaintiff thereupon signed the following statement:

"To E. F. Carnell, Agent and Broker, for the sale of the Melby lands as per listing.

"I, John Jr. Hughes, have read the Listing Agreement covering the Melby ranch in Petroleum County, Montana and I hereby agree to purchase the same and pay for the said lands in accordance with the said listing agreement and I deposit herewith with you the sum of Ten Thousand Dollars ($10,-000.00) as a binder payment and as evidence of good faith and I will go through with the contract in accordance with the listing agreement signed by Mr. and Mrs. Melby, with you as agent.

"Dated this 24th day of Sept. 1953.

"/s/ John Jr. Hughes"

Plaintiff paid to Carnell the sum of $10,000 and received the following receipt:

"Received of John Jr. Hughes————— ————
"Ten Thousand & no/100 Dollars
"Dep. on Melby Ranch as per Listing
"Dated Sept. 24—1953———— ————
"$10,000/00 /s/ E. F. Carnell"

Carnell thereupon wrote his own check in the sum of $5,000 and delivered it to the defendant, R. M. Melby. However, before delivering the check to Mr. Melby, Carnell informed Melby that he had sold the ranch to Mr. Hughes. Then for the first time, according to Carnell, Mr. and Mrs. Melby informed

him that their son William owned a part interest in the ranch and that before the contract could be performed they wanted to discuss the matter with William. On October 8, 1953, Carnell received a letter which was written by Mrs. Melby at the request of her husband which was as follows:

"Mr. E. F. Carnell,
"Lewistown, Mont.
"Dear Sir:
"Called at your office Tue. Oct. 6, 1953 found you out. Also called on Mr. Hugh he too out.
"Son said O.K. to sell.
"Sincerely yours,
"/s/ R. M. Melby"

It was after receipt of this letter that Carnell delivered the $5,000 check to Mr. Melby. Arrangements were then made for the plaintiff and Mr. and Mrs. Melby to meet in Roundup at the office of lawyer Mather to prepare and place in escrow the necessary papers. Before this contemplated meeting Carnell received another letter from Mr. R. M. Melby reading as follows:

"Roundup, Montana
"Oct. 15, 1953
"Mr. E. F. Carnell
"Lewistown
"Mont.
"Dear Sir:
"Came to see you today, but find you were out of your office.
"Had another letter from son asking us to hold this deal off until he comes home for his vacation Christmas.
"Enclosing is your check don't want to hold it that long.
"Yours sincerely,
"/s/ R. M. Melby"

On October 15, 1953, R. M. Melby caused two deeds to be recorded which vested an undivided one-third interest in the property to the son William. These deeds had been executed and acknowledged several months before they were recorded.

It should be noted that Mr. Melby testified that he had informed Carnell at the inception of the negotiations that the son William had an interest in the ranch. This Carnell denied. However there is no testimony in the record that plaintiff at any time was advised of the fact that William had any interest in the ranch. It should be noted also that before Mr. Carnell undertook any of the dealings resulting in the sale of the property he examined the records in Petroleum County and found that the title to all the property stood in the name of R. M. Melby and his wife, and that there was nothing of record to indicate the son had any interest in it. Carnell agreed to wait until the son returned during the Christmas holidays and plaintiff was so advised. During the Christmas holidays the Melbys declined to go through with the contract and this action followed.

One of the findings made by the trial court was that the plaintiff on November 15, 1953, did not have as much as $20,450 of his own and had no legally binding agreement from any person or corporation or other entity to give him such sum of money. At this point it should be noted that the pleadings do not raise any question of the plaintiff's ability to meet the obligations under the contract. The only defense asserted by the answer is that there was not any binding contract on the part of the defendants because the writing was insufficient to authorize Carnell to make the contract under the statute of frauds. Had the issue been raised by the pleadings doubtless plaintiff would have submitted more evidence of his ability to meet the contractual obligations assumed by him. He did, however, testify in substance as follows: That at the time of this transaction he was the owner of 250 head of cattle and around 1,500 acres of land; that he had made arrangements with the Northwestern Bank in Lewistown to make full payment for the property; that at the time of the trial he was in a position to make the entire down payment and could in fact write a check for the entire purchase price. This evidence was uncontradicted.

The conclusion reached by the trial court cannot be sustained upon the finding that plaintiff was not able to make the down payment of twenty-nine percent of the purchase price.

The principal contention, however, is that there has been a failure to meet the requirements of the statute of frauds. This was expressly raised in the answer which alleged that the action is barred by sections 13-606, 93-1401-7 and 74-203, R.C.M. 1947. It is well settled that the note or memorandum necessary to meet the requirements of the statute of frauds may consist of several writings. Johnson v. Elliot, 123 Mont. 597, 218 Pac. (2d) 703; Johnson v. Ogle, 120 Mont. 176, 181 Pac. (2d) 789; Ward v. Mattuschek, 134 Mont. 307, 330 Pac. (2d) 971. Likewise it is sufficient if it contains all the essentials of the contract and they may be stated in general terms. Dineen v. Sullivan, 123 Mont. 195, 213 Pac. (2d) 241; Long v. Needham, 37 Mont. 408, 96 Pac. 731; Hunt v. S. Y. Cattle Co., 75 Mont. 594, 244 Pac. 480. The fact that the memorandum did not specify when the deed should be furnished does not defeat the sufficiency of the note or memorandum because the law implies that it be furnished within a reasonable time after plaintiff performed the obligations imposed upon him. R.C.M. 1947, section 13-723.

There are many cases supporting the view that ordinarily the contract with a broker simply constitutes a listing of the property for sale and authorizes the broker to search for a purchaser, but it does not give the broker authority to bind the owners of land to any agreement of sale that he might make. There are exceptions to the rule and of necessity each individual contract must be given its own interpretation. It is, of course, essential to ascertain the intention of the parties. If the sellers intended to give the agent authority to make an agreement in their behalf there is no reason why they may not do so. What then was the intention of the parties as expressed in the agreement employing the broker? The document signed by the defendants authorized the broker Carnell to receive a down payment. It is difficult to understand how he could do so without at the same time obligating the defendants to sell

the land. That is the sum and substance of our holding in the Ward case, supra. But even on that point there is a conflict of authorities. Thus in 8 Am. Jur., Brokers, section 61, pages 1018-1019, it is said that ''Ordinarily, there is no implied authority to execute a contract of sale from a mere listing of the property with a broker, even though the owner specifies the terms of sale, from a mere employment to find a purchaser or to sell real estate, even though an exclusive power of sale is given, from an employment to negotiate or effect a sale, from an authorization to accept a deposit or close a deal &ast; &ast; &ast;.''

For cases holding that the authority to accept and receipt for a deposit on a sale does not carry with it the implied authority to make an agreement binding upon the owner see Slater v. Rauer, 43 Cal. App. 748, 185 Pac. 864; Thompson v. Scholl, 32 Cal. App. 4, 161 Pac. 1006.

We think the better-reasoned cases support the view that where the broker is authorized to receive a down payment he has the implied authority to enter into an agreement binding upon the sellers. See Steele v. Nelson, 139 Kan. 559, 32 Pac. (2d) 253; Goldberg v. Sosnowski, 244 Mich. 515, 221 N.W. 617; Ward v. Mattuschek, supra, and compare note in 48 A.L.R. 644 and 43 A.L.R. (2d) 1028.

The case of Solana Land Co. v. National Realty Co., 77 Ariz. 18, 266 Pac. (2d) 739, is an interesting case, but there the broker did not have the authority to accept a deposit. The court in that case rested its decision largely on the Michigan case of Landskroener v. Henning, 221 Mich. 558, 191 N.W. 943, but as above noted the Michigan Court takes the contrary view when the broker is given the authority to accept a down payment.

Another circumstance in this case which points to the conclusions that the broker Carnell had authority to close the deal is the fact that the agreement expressly recites in substance that a sale for a less amount than that stipulated in the contract may be made, but in that event it would have to be authorized

by the sellers. This indicates that so long as the stipulated price was obtained there was no necessity to further contact the sellers.

The court erred in holding that there was not a sufficient note of memorandum to meet the requirements of the statute of frauds above cited. This being true the plaintiff was entitled to specific performance of the contract. Since it is alleged that the defendants caused plaintiff damages by their refusal to surrender possession, plaintiff is entitled to damages, if proved. The cause must be remanded for further proceedings to determine the amount of the damages sustained by him. So far as the interest of the son is concerned, he had no interest in the property at the time these transactions took place; that is to say his interest was not known to plaintiff who was an innocent purchaser. Since the agent Carnell was the agent for the defendants and not the plaintiff, plaintiff was not bound by any knowledge possessed by Carnell even if we assume that Carnell knew of the son's interest before these transactions took place.

Accordingly the cause is remanded for further proceedings consistent with the views herein stated.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICE CASTLES, and THE HONORABLE C. B. ELWELL, District Judge (sitting in place of MR. JUSTICE BOTTOMLY), concur.

MR. JUSTICE ADAIR:

I dissent.

By amended complaint filed April 17, 1954, in the district court for Petroleum County, Montana, the plaintiff, John Jr. Hughes sought to establish a completed binding contract resting in parol and to compel the defendants, R. M. Melby and Eli, husband and wife and their son, William Melby, to perform the alleged completed and binding oral contract by selling and transferring to the plaintiff, John Jr. Hughes, a 3,560 acre ranch situate in Petroleum County and owned by the de-

fendant Melbys. The plaintiff also sought to recover from the Melbys judgment in the sum of $10,000 as damages alleged to have been suffered by the plaintiff, John Jr. Hughes, "as the consequence of defendants' refusal to deliver possession of said premises to the plaintiff on April 1, 1954."

Attached to plaintiff's amended complaint, and made a part thereof, are two exhibits, the one being designated as Exhibit A and the other as Exhibit B.

*Exhibit A.* Plaintiff's Exhibit A is a written listing agreement obtained by one E. F. Carnell, a real estate agent, from the defendants, R. M. Melby and Eli Melby, his wife. Such listing agreement reads:

## "APPOINTMENT OF AGENT

"I hereby appoint E. F. Carnell of Lewistown, Montana, whose office is located in said City and State, my agent with the exclusive right to sell the following property:

"My ranch property on Flatwillow T. 12-N, R. 26-E,

"Petroleum County, Montana (3560 acres, more or less)

"For the sum of $105,000.00, including 5 stacks of hay on Pike Creek.

"Conditions and terms of the sale are as follows:

"29 Percent cash, balance 10 annual payments at 5% interest by November 15th, possession of land April 1, 1954, seller reserve ½ land owner's royalty. Transfer all water rights and grazing rights in District, seller pay 1953 taxes.

"And I agree to furnish a title as outlined in the following paragraph A.

"A. An abstract of title showing a good merchantable title to said property together with a warranty deed properly executed.

"Said sale may be made for a less amount if hereafter authorized by me; you are further authorized to receive a deposit on the sale price. I agree to pay a commission of $5,-000.00 on the sale price and the commission shall be payable as soon as the sale is made and a down payment has been made, or sale price paid in full at the time of sale, and, or

as soon as a binder fee has been collected on the sale, which-ever be first.

"*This authorization is to remain in effect and full force for 10 days.*

"Dated at Lewistown, Montana this 24th day of September, 1953.

> "R. M. Melby
> "Eli Melby"

Emphasis supplied.

The only person mentioned in the above writing is E. F. Carnell, the real estate agent, but he did not sign the instrument. The only persons who affixed their signatures to the writing above quoted were the defendants, R. M. Melby and Eli Melby, his wife.

The listing agreement evidences a deal made by the real estate agent, E. F. Carnell, with Mr. and Mrs. R. M. Melby for the listing with Carnell of the 3,560 acre ranch owned by the Melbys and situate in Petroleum County. Such deal was strictly by and between Carnell on the one hand and R. M. Melby and wife on the other hand. The plaintiff, John Jr. Hughes, is not a party to nor is he even mentioned in the listing agreement, Exhibit A. There was and is no privity of contract as between the plaintiff Hughes and the defendants. Melby.

*Exhibit B.* On the same day that E. F. Carnell, the real estate agent, procured the above listing agreement from Mr. and Mrs. Melby, he, Carnell, contacted the plaintiff, John Jr. Hughes, and allowed Hughes to read the listing agreement, Exhibit A, which Carnell had obtained from the Melbys, whereupon the plaintiff Hughes immediately and on the same day signed and delivered to E. F. Carnell the written notice or memorandum, being Exhibit B herein, which reads:

"To E. F. Carnell, agent and broker, for the sale of the Melby lands as per *listing*.

"I, John Jr. Hughes, have read the *Listing Agreement* covering the Melby ranch in Petroleum County, Montana, and

I hereby agree to Purchase the same and pay for the said lands in accordance with the said *listing agreement* and I deposit herewith with you the sum of Ten Thousand Dollars ($10,000.00) as a binder payment and as an evidence of good faith and I will go through with the contract in accordance with the *listing agreement* signed by Mr. and Mrs. Melby, with you as agent.

"Dated this 24th day of September, 1953.

"John Jr. Hughes"

Emphasis supplied.

The notice so addressed to E. F. Carnell and subscribed by the plaintiff, John Jr. Hughes, evidences a deal made by and between the real estate agent Carnell and the plaintiff Hughes. No defendant herein is a party to plaintiff's written notice, Exhibit B, nor is such notice addressed to the Melbys. There was and is no privity of contract as between the plaintiff Hughes and the defendants Melby.

The written notice, Exhibit B, subscribed by the plaintiff Hughes repeatedly refers to Exhibit A, supra, as a *Listing Agreement,* and that is precisely what it is, being the same form of listing agreement and, procured by the same real estate agent, E. F. Carnell, as was involved in the most recent case of Ward v. Mattuschek, 134 Mont. 307, 330 Pac. (2d) 971.

The concluding sentence of the above-quoted listing agreement, Exhibit A, reads: "This authorization is to remain in effect and full force for 10 days." Such listing agreement is not acknowledged, hence it may not be recorded. R.C.M. 1947, section 73-105. It does not constitute a power of attorney. It does not authorize the real estate agent Carnell to execute or deliver in the names of the defendants Melby any contract for sale and purchase or any deed of conveyance. It is purely and simply a unilateral listing agreement obtained from the landowners by the real estate agent. It evidences a deal wherein the Melbys have listed their 3,560 acre ranch with the real estate agent and wherein the Melbys agree to pay the real estate agent "a commission of $5,000.00 on the sale price * * *

as soon as the sale is made and a down payment has been made
* * * or as soon as a binder fee has been collected on the
sale, whichever be first.'' However, no authority is given the
real estate agent to execute any deed of conveyance or any con-
tract of sale. The land is the property of the Melbys and it is
from them and not from the realtor Carnell that any contract
of sale or any instrument of conveyance must come.

The payment of a stipulated purchase price of and in itself
will not remove a contract for the sale of real property from the
operation of the statute of frauds. See Boulder Valley Ditch
Mining & Milling Co. v. Farnham, 12 Mont. 1, 29 Pac. 277;
Ducie v. Ford, 8 Mont. 233, 19 Pac. 414, affirmed 138 U.S.
587, 11 S. Ct. 417, 34 L. Ed. 1091.

The record before this court wholly fails to show that the
plaintiff, John Jr. Hughes, ever, at any time, took possession
of the lands and premises mentioned and listed in the listing
agreement.

The payment by the plaintiff Hughes to the real estate agent
Carnell, of a down payment to apply on the purchase price of
the lands and premises does not constitute sufficient past per-
formance to remove the transaction from the operation of the
statute of frauds. See Dineen v. Sullivan, 123 Mont. 195, 213
Pac. (2d) 241.

To remove the transaction from the operation of the statute
of frauds it is essential in this jurisdiction that there be both
payment and also possession of the lands and premises by the
buyer. Shaw v. McNamara & Marlow, Inc., 85 Mont. 389, 278
Pac. 836; Wright v. Brooks, 47 Mont. 99, 130 Pac. 968; Wilburn
v. Wagner, 59 Mont. 386, 196 Pac. 978; Milwaukee Land Co.
v. Ruesink, 50 Mont. 489, 148 Pac. 396.

In Dineen v. Sullivan, 123 Mont. 195, 198, 201, 205, 213 Pac.
(2d) 241, 242, supra, this court said:

''This court has said that the note and memorandum must
contain the essentials of the contract so that they may be ascer-
tained from the writing without a resort to oral evidence. * * *

'' 'In like manner the promises of both the parties so far

as they are executory, must all be included in the memorandum
—whether it be one or more writings—so that parol evidence
shall not be necessary to ascertain anything which the parties
have undertaken to do or to omit. Every written contract pre-
supposes a prior verbal agreement which it embodies—in fact,
the writing is the *evidence* of the agreement, and not the es-
sence of it. *The memorandum,* in order to satisfy the statute
of frauds, *must contain all the stipulations and undertakings
of the verbal bargain.* If any of these stipulations are omitted,
then the memorandum—although the facts which it does con-
tain might, by themselves, make *a* complete contract—is not
a note or memorandum of the agreement as required by the
statute, and cannot be enforced at law or in equity.' Pomeroy's
Work, Specific Performance of Contracts (3rd Ed. 1926), sec-
tion 91, page 225. (Emphasis supplied.)

"Professor Williston in 2 Williston on Contracts, Rev. Ed.,
1645, section 575, states: 'So, although the contract appearing
in the memorandum seems to be complete upon its face, if, in
fact, there were additional terms, the memorandum is insuffi-
cient because the memorandum must state the essential terms
of the oral contract. Thus, *if there is* a warranty, or a condi-
tion of approval by the buyer, *or a term of credit, or security,
or if the place or time of delivery or payment is agreed upon,
these must be included in the memorandum.'* (Emphasis sup-
plied.)

\* \* \* \* \* \*

"Since the amended complaint shows upon the face thereof
that the memorandum of agreement, signed by Mr. Wine and
Mr. and Mrs. Sullivan, does not contain all the essentials of the
oral contract and agreement and such essentials cannot be ascer-
tained without resort to oral evidence, such memorandum is suf-
ficient to constitute the note or memorandum required by Mon-
tana statutes, and such oral contract and agreement cannot
be enforced, in law or in equity, and the lower court's action,
in sustaining the demurrer to the complaint and in dismissing
the action was correct and is hereby affirmed.''

The parties to the listing agreement were Mr. and Mrs. Melby who signed the agreement and E. F. Carnell, the real estate agent, who solicited and procured the agreement, but who did not sign it. Should the Melbys breach or rescind the listing agreement all that Carnell stood to lose thereby would be the amount of the real estate agent's commission provided for in the agreement. Carnell would not be entitled to specific performance nor would he be entitled to judgment for $10,000 as damages suffered by reason of not being allowed to acquire the grazing lands and feed that would have accompanied a sale and change of possession of the property.

In my opinion, the plaintiff Hughes has no valid or enforceable contract with the Melbys who own the ranch and premises here involved, and he has no right of action against the Melbys for either specific performance or for $10,000 as damages because of being unable to acquire the Melbys' ranch and there graze and feed his cattle.

Mr. and Mrs. Melby should not be compelled by court to make an involuntary conveyance of their home and ranch nor should they be made to respond in damages to the plaintiff Hughes for failing to deliver to him a deed to their home.

In my opinion the plaintiff, John Jr. Hughes, has no provable or valid contract for the purchase of the Melby ranch, and the decision and judgment rendered by the learned district judge who presided at the trial of the case in the district court should be affirmed.

## ON REHEARING

### MR. JUSTICE ANGSTMAN:

Defendants filed a motion for rehearing herein only so far as the foregoing opinion promulgated on July 16, 1958, affects the interest of defendant, William Melby. That motion was granted.

Upon the rehearing on that question Justice Bottomly took part instead of Judge Elwell, who sat in his place on the original hearing.

This opinion, considering only the interest of William Melby, is therefore added to the foregoing opinion.

The record with respect to the interest of William Melby shows the following:

Carnell, defendants' agent, testified that he met R. M. Melby and his wife in August or September 1953 at their ranch. He discussed the matter of their selling their ranch several times. They finally signed the contract for the sale of the land involved here. He was asked:

"Q. In any of those discussions was the defendant William Melby present? A. Was he present?

"Q. Yes? A. I believe he was present the first time I called at the ranch, I believe he was. * * *

"Q. Did he participate in any of these discussions? A. No he didn't; I met him and talked to him a while.

"Q. Did he at any time before September 24th, or on September 24th, assert he had any title in this property? * * * A. No he did not, not to me."

Prior to making the contract of sale with plaintiff Carnell examined the records of Petroleum County and found that the title stood in the name of Mr. and Mrs. Melby and that the records did not reveal that William Melby owned any interest in the property. Plaintiff testified that he was with Carnell when the records were thus examined.

Carnell then made the deal with plaintiff and accepted payment of $10,000. A day or two later he notified Mr. and Mrs. Melby that he had sold the ranch, and that Mr. Melby then said: "I will have to see Bill, now Bill has an interest in the ranch, I will have to discuss it, talk it over with him. * * * I will write Bill, he is in school and I don't want to excite him, he is studying hard. I will write him then will let you know what he said, his reaction on the deal."

Later the witness Carnell received the letter from Mr. Melby in which he stated among other things "Son said O.K. to sell." He then gave Mr. Melby a check for $5,000 and arrangements were made to meet some ten days later in Mathers' office in

Roundup to complete the deal. Meanwhile Mr. Melby returned the check to the witness by mail, containing a letter in which it was stated: "Had another letter from son asking us to hold this deal off until he comes home for his vacation Christmas." Carnell testified he met all three of the Melbys at Christmas time and Mr. Melby expressed satisfaction with the deal but said his son Bill, "don't want to sell to Hughes."

Mr. Melby also testified that Bill "was present one time when Carnell was at the ranch discussing the sale." He denied hat he had received a letter from his son saying it was O.K. to sell, but he assumed it was O.K. with his son. He testified also that he recorded the deed which placed a one-third interest in the son. In fact there were two deeds. One by Mr. and Mrs. Melby to Joan E. McKeever dated December 23, 1952, and the other dated December 24, 1952, by Joan McKeever to Mr. and Mrs. Melby and William Melby their son in equal shares. The son did not pay anything for the property. It was a gift to him and a gift tax was paid on it. The son was not at the ranch when he recorded the deeds. William Melby testified that he did not tell his parents to record the deeds. The deeds had been kept under the control of Mr. Melby in his desk. Mr. Melby also testified that he and his wife told Mr. Carnell before the contract was signed that the son had an interest and there would be no sale unless he was willing but so far as the record shows plaintiff Hughes knew nothing of this.

It is contended by counsel for defendant, William Melby, that because of sections 73-201 and 73-202 the right of William Melby has not been affected by the sale.

Section 73-201, R.C.M. 1947, reads:

"Every conveyance of real property acknowledged or proved, and certified and recorded as prescribed by law, from the time it is filed with the county clerk for record, is constructive notice of the contents thereof to subsequent purchasers and mortgagees; and a certified copy of any such recorded conveyance may be recorded in any other county, and when so re-

corded the record thereof shall have the same force and effect as though it was of the original conveyance.''

Section 73-202, R.C.M. 1947, provides:

''Every conveyance of real property, other than a lease for a term not exceeding one year, is void against any subsequent purchaser or encumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded.''

Where, as here, William Melby received the property as a gift from his father, it is doubtful whether he can be classed as a good-faith purchaser for a valuable consideration within the meaning of section 73-202, supra. Foster v. Winstanley, 39 Mont. 314, 102 Pac. 574. We pass that point without a ruling.

Likewise where the deed to defendant William Melby was held by his father, as here, it is also doubtful whether it was ever delivered to William Melby. Plaintiff contends that when William Melby stood by, knowing that negotiations were being carried on by his father to sell the land, he will be estopped because of his failure to record his conveyance from relying on it as against one who acted upon the nonexistence of the conveyance as shown by the record. He relies on Marling v. Nommensen, 127 Wis. 363, 106 N.W. 844, 845, 5 L.R.A., N.S., 412, 7 Ann. Cas. 364. The court in that case said:

''A moment's reflection must convince one that a prior purchaser may, by failure to record his conveyance, certainly in connection with other facts and circumstances, become estopped to rely on it against one whom he has led to believe and act upon its nonexistence, although he should afterwards get his conveyance on record before the later one.'' We point out that in the note in 7 Ann. Cas. 367, it is stated that that case is not supported by the authorities in other jurisdictions. We took note of that point in Hastings v. Wise, 91 Mont. 430, 8 Pac. (2d) 636.

There is however a long line of cases holding in substance that if a person stands by and allows another to purchase his

property without giving him any notice of his title, a court of equity will treat it as fraudulent for the owners to afterwards try to assert his title. The cases supporting that rule are listed in the note in 50 A.L.R. 673.

We recognized the above rule in Yellowstone National Bank v. McCullough, 51 Mont. 590, 154 Pac. 919, 923, where the court quoted with approval from Wendell's Ex'rs v. Van Rensselaer, 1 John's. Ch., N.Y., 344, as follows:

" 'There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares that if one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel'."

The court in that case did not apply the rule because the deed involved had been placed of record and that was held to be all the notice required to be given by the grantee named in the deed.

If we assume that William Melby actually had an interest in this property before it was sold to plaintiff the evidence is sufficient to estop him from now asserting it after he stood by knowing that his parents were about to sell it to plaintiff. Furthermore it is doubtful whether defendant William Melby ever acquired an interest in the property.

Here Mr. Melby, the father, conducted all the dealings with reference to the sale of the property. It was he who sought to make a gift of a third of the property to his son. He held the deed giving that interest to his son. He chose the time to place it of record. If he did any act making his gift ineffective he was to blame.

For him to negotiate a sale, through his agent Carnell, with plaintiff who acted on the supposition that Mr. Melby and his wife were the sole owners as shown by the record, and

then to come forward with a deed of a one-third interest to the son, after the sale was made, would be allowing him to perpetrate a fraud and accomplish a gift to the detriment of an innocent purchaser for value.

We see no difference between this case where the deed to the son was executed before the sale to plaintiff but not recorded and one where the deed was made afterwards. It would operate as a fraud in either case. In effect Mr. Melby is estopped from accomplishing a gift to his son after first completing a sale of the property.

The judgment should be modified in accordance with the views stated in the opinion promulgated on July 16, 1958, as well as with the views herein stated.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE CASTLES, concur.

MR. JUSTICE BOTTOMLY: (dissenting).

The original majority opinion on this matter, in which opinion I took no part, determined that the entire Melby property whether belonging to R. M. Melby, Eli Melby, his wife, or William Melby, was subject to specific performance of a contract to sell the same to one John Junior Hughes. That opinion held that the contract (a real estate listing) was subject to specific performance. The listing was signed by R. M. Melby and Eli Melby, his wife, and given to one E. F. Carnell, a real estate broker. During the time the so-called contract to sell was being negotiated, a deed was recorded which showed that William Melby, who is R. M. and Eli Melby's son, was the owner of one-third of the property which was the subject matter of the purported contract for sale. William Melby had not signed any of the instruments which this court held constituted the authority to the real estate broker to make a contract that bound all three Melbys to sell their ranch property.

For the reason that no privity of contract existed between the plaintiff seeking specific performance, John Junior Hughes

or E. F. Carnell and William Melby, and because William Melby, prior to the commencement of this suit for specific performance, appeared as a record owner of one-third of the property sought to be charged, a rehearing was granted to determine the status of the property owned by William Melby. Title to the one-third interest at issue here was acquired by William Melby on December 24, 1952, by a valid completed gift from R. M. and Eli Melby. The title acquired was a one-third interest as a tenant in common. The gift was completed and accepted on December 24, 1952. Possession passed to William Melby at that time. The fact the deed showing the interest of William Melby was not recorded until over nine months following the completion of the gift, and the passing of the title, has no effect at all upon the validity of the transfer by gift.

The implication in the majority opinion that the gift was incomplete is erroneous. However, the majority opinion casts doubt upon the gift without any showing or implication in the record that the gift of a one-third interest in the realty to William Melby was invalid. The majority opinion now rests its holding on this point by asserting that the Melbys were estopped. The facts in the record negative this holding.

Approximately eight months after title to one-third of the property at issue here passed to William Melby, one E. F. Carnell visited the Melby ranch seeking to induce them to give him a listing agreement so that he could seek buyers for their property. He testified that at that time he did not know the son William Melby owned an interest in the property. This was disputed by R. M. Melby who testified he had informed Carnell that his son had an interest in the property and that it would not be sold unless his son was willing to join in the sale. On September 24, 1953, when Mr. and Mrs. Melby signed the listing agreement, William Melby was not in the State of Montana. Subsequently when Carnell came back to the Melby place and said Hughes would buy the property, he was advised the son would have to be informed about the contemplated sale and his consent obtained. When R. M. Melby informed Carnell

that the son did not want to do any more about the sale until Christmas vacation and at the same time recorded the deeds showing the son's interest, "Carnell agreed to wait until the son returned during the Christmas holidays and plaintiff was so advised." 340 Pac. (2d) 515.

At the time the deed to William Melby was recorded, Carnell did not believe a sale was completed, and he so advised the plaintiff. Carnell agreed to wait until Christmas vacation. He did wait until then, and at that time he again saw the Melbys attempting to get them to complete the sale. It is obvious that Carnell did not think the sale was completed and he informed the plaintiff of that fact. William Melby was not "standing by knowing his parents were about to sell this property." No deal was made requiring him to make known his interest prior to his leaving the state.

He was not in the state and had no knowledge of any contemplated sale when the listing agreement was signed on September 24, 1953.

As soon as he was informed that a prospective buyer had been found, he made known to the real estate broker his desire to wait and his title was recorded. *The real estate broker acknowledged the fact that the son's interest would have to be considered and agreed to wait for him to make up his mind whether or not he would sell.* Carnell did not treat this as a completed sale prior to the recording of the son's deed. He informed the plaintiff that he would wait until William Melby came home for Christmas vacation thereby recognizing William Melby's interest in the property prior to the completion of any sale and sought to obtain William Melby's consent to sell when he did come home for Christmas vacation.

There is surely no estoppel raised by the actions of William Melby when these actions were *accepted* and *concurred* in by E. F. Carnell. This plaintiff having knowledge of Carnell's concurrence could not stand idly by without protesting such concurrence and now assert fraud against William Melby. The facts in this case will not support a holding of estoppel against

William Melby. I would modify the original judgment which decrees specific performance against William Melby, R. M. Melby and Eli Melby, and affirm the judgment of the district court, which properly applied the applicable statutes.