No. 82-296

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

MURL W. McNABB & JOAN McNABB,

        Plaintiffs and Respondents,

    -vs-

GOLDIE NORINE and ROD ANDERSEN, doing
business as TOWN COUNTRY REALTY,

        Defendants and Appellants.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the county of Gallatin, The Honorable
W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

        Landoe, Brown Law Firm; John Kommer argued, Bozeman,
Montana

    For Respondents:

        Morrow, Sedivy, Olson & Eck; Edmund Sedivy argued,
Bozeman, Montana

---

Submitted: January 18, 1983

Decided: June 9, 1983

Filed: JUN 9 1983

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Goldie Norine and Rod Anderson appeal from a judgment of the District Court, Eighteenth Judicial District, Gallatin County, in favor of the plaintiffs, based on a jury verdict of $45,000 in favor of the McNabbs. We affirm as to Goldie Norine and reverse as to Rod Anderson.

The issues in this case are these:

1. The legal sufficiency of a memorandum signed by Goldie Norine to establish an oral agreement to buy real property from the McNabbs.

2. The sufficiency of the evidence to support the judgment against Rod Anderson.

3. The sufficiency of the evidence to support the damages of $45,000.

In the fall of 1978, Goldie Norine and Rod Anderson had been acting as real estate agents for Murl and Joan McNabb, attempting to locate farm property larger than the 15 acre place McNabbs were then living on.

There is a dispute in the evidence as to the nature of the relationship between Rod Anderson and Town and Country Real Estate, the realtor firm involved in this case. Both Goldie Norine and Rod Anderson claimed that Goldie was the sole proprietor during the incidents here involved. At the time of the trial, Rod Anderson admitted to being the sole owner of Town and Country Real Estate. While they were dealing with the McNabbs, the advertising for the firm, including stationery, made no distinction and from such it appeared that Goldie Norine and Rod Anderson were doing business together as Town and Country Real Estate.

- 2 -

At any rate, Rod Anderson prepared on separate occasions two buy-sell proposals for the McNabbs to purchase a farm near Livingston, Montana, known as the Branger Place. Murl McNabb testified that he had told the realtors that he would have to sell his farm property (the Kelly Canyon place) in order to complete the purchase of another piece of real estate. In the second buy-sell agreement made out by Rod Anderson for the Branger Place, it was proposed that the McNabbs simply trade the Kelly Canyon property as a downpayment. Branger refused to accept this proposal and the deal fell through.

In early 1979, Goldie Norine showed the McNabbs the Flikkema Farm, and prepared an initial buy-sell agreement dated February 7, 1979. The proposed buy-sell called for a purchase price of $300,000 with $85,000 to be paid down. The proposal included a statement "earnest monies refunded if purchaser cannot sell his property." The buy-sell was signed by the McNabbs but not accepted by the Flikkemas.

Goldie Norine prepared a second buy-sell agreement at the request of the McNabbs, but nothing came of the second proposal.

A third buy-sell agreement was prepared by the realtors, typed by Rod Anderson, whereby the purchase price to the Flikkemas was to be $300,000, with $20,000 downpayment, and $65,000 to be paid on or before June 20, 1979. This buy-sell agreement was never signed by either purchasers or sellers, but it contained the terms of a final contract for deed signed by both parties on March 5, 1979. It was admitted by Goldie Norine that the reason the downpayment monies were to be made in two payments was to allow her time to sell the Kelly Canyon property on behalf of the McNabbs.

- 3 -

The first portion of the downpayment, $20,000, the McNabbs borrowed from First Security Bank of Bozeman.

The McNabbs claimed during the trial, and under the jury verdict we must accept, that the McNabbs had made it clear to the realtors Goldie Norine and Rod Anderson that the Kelly Canyon property would have to be sold before the McNabbs could complete the purchase on the Flikkema place or any other farm. The McNabbs also testified that before the signing of the Flikkema contract for deed, Goldie Norine promised the McNabbs that if they would go ahead and buy the Flikkema place, she would either sell the Kelly Canyon property for them or buy it herself. The McNabbs claimed that based upon these promises, they signed the Flikkema contract for deed. Thereafter the realtors received a commission of $12,000 from the Flikkemas with Goldie Norine receiving one-half and Rod Anderson receiving the other half of the commission.

Later a formal listing agreement was prepared by Goldie Norine authorizing Town and County Real Estate to sell the Kelly Canyon property. The listing price was set at $106,000, apparently to allow the realtors to receive a commission over and above the expected sales price. Nothing materialized, however, from the exclusive listing, and the Kelly Canyon property remained unsold.

As the deadline for the $65,000 payment to Flikkemas drew near, at the request of McNabbs, Goldie Norine delivered to McNabbs a written memorandum on Town and Country Real Estate stationery stating:

> "I will buy Murl property for the appraised value
> which will run in the $90,000 approx. as soon as
> financing is available within the next two weeks.
> /s/ Mrs. Goldie Norine"

- 4 -

Goldie Norine testified that she fully intended to perform the purchase, and that she considered the memorandum a valid agreement.

The formal listing of the Kelly Canyon property with Town and Country Real Estate was to expire on June 19, 1979, one day before the $65,000 payment was due on the McNabb-Flikkema contract. The listing was extended to August 1, 1979. When the realtors failed to sell the property and did not purchase it themselves, the McNabbs attempted to sell the property through a different real estate firm. On February 20, 1980, formal demand was made upon Goldie Norine to purchase the property. This demand was refused, Goldie Norine and Rod Anderson answering through their attorney.

On August 5, 1980, the McNabbs sold the Kelly Canyon property for $75,000. At closing the McNabbs received all but $22,000 of the purchase price. They paid a commission of $4,500 and had other closing costs of $326.

The McNabbs commenced suit against Goldie Norine and Rod Anderson, and after jury trial, the judgment of $45,000 resulted.

The appellants contend that the memorandum signed by Goldie Norine is an insufficient instrument on which to establish an oral agreement to buy real property. They contend that the memorandum was not signed by Rod Anderson, that the memorandum is deficient and that its essential elements cannot be determined with reasonable certainty, i.e., the parties to the contract, the land subject to the contract, the terms and conditions of the contract, and by and to whom the promises were made. In those contentions, they rely on Johnson v. Elliott (1950), 123 Mont. 597, 218 P.2d 703; Lewis v. Peterson (1954), 127 Mont. 474, 267 P.2d

127; and Dineen v. Sullivan (1950), 123 Mont. 195, 213 P.2d 241.

McNabbs counter that here the memorandum sets forth the essential terms of the oral contract and it should be enforced. They also rely on Dineen, supra, and on Johnson v. Ogle (1947), 120 Mont. 176, 181 P.2d 789, where this Court held that parol evidence was admissible for the purpose of explaining a memorandum.

In this case, the person who signed the memorandum is Mrs. Goldie Norine. At trial, she admitted that she intended to go through with the agreement as set forth in the memorandum. While the description "Murl property" is not in itself sufficient, it is identifiable through the listing agreement given to Town and Country Real Estate in which the Kelly Canyon property was fully described. A memorandum to support a contract may involve several writings in order to determine the meaning of the parties. Hughes v. Melby (1959), 135 Mont. 415, 340 P.2d 511. The purchase price in the memorandum is set at "$90,000 approx." Mrs. Norine testified at the trial that the property was worth $90,000 to $95,000 and she accepted a buy-sell agreement for the property when it was listed for $106,000. The date of performance is fixed "as soon as financing is available within the next two weeks."

Thus the memorandum appears to have in it the essential elements of a binding contract. If the material elements are stated in general terms, all the details or particulars need not be stated. Empire Steel Mfg. Co. v. Carlson (1981), ____ Mont. ____, 622 P.2d 1016, 38 St.Rep. 101; Johnson v. Elliott (1950), 123 Mont. 597, 218 P.2d 703. The memorandum, when read in connection with the listing agreement for the

- 6 -

property involved contains the material elements of a contract, which is enough to satisfy the statute of frauds, section 30-11-111, MCA. Dineen, supra; Elliott, supra; Ogle, supra.

Moreover, the memorandum was received in evidence during the trial in the District Court without objection and especially without contention that the memorandum did not satisfy the statute of frauds. We will ordinarily not review an issue in the Supreme Court that has not been raised in the District Court. Chadwick v. Giberson (1980), ___ Mont. ___, 618 P.2d 1213, 1215, 37 St.Rep. 1723, 1726; Davis v. Davis (1972), 159 Mont. 355, 361, 497 P.2d 315, 318. Appellants contend, however, that the lack of objection at the time of trial should not be fatal here because the legal insufficiency of the memorandum survives as an issue in the Supreme Court. We have indeed held that the Supreme Court has the duty to determine whether parties were denied substantial justice in the District Court and that we can consider, using discretion, whether the lower court deprived a party of a fair and impartial trial even if an objection was not raised there. McAlpine v. Midland Electric Co. (1981), ____ Mont. ____, 634 P.2d 1166, 38 St.Rep. 1577. In order for us to consider, however, an issue not raised before the District Court, we hold that there must be plain error, or the refusal to consider the issue must result in substantial injustice and deprive the party raising the issue of a fair trial. Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169. We cannot, considering the circumstances of this case, so hold. It is obvious from the memorandum signed by Goldie Norine that she intended it to be an agreement between herself and the McNabbs (though she

- 7 -

contended that it was contingent upon her obtaining the financing), and that she intended to perform the contract. It is too late to raise the statute of frauds as a defense for the first time on appeal in that situation.

This brings us to the second issue, whether the verdict against Rod Anderson is supported in the evidence.

Anderson contends that on its face, the memorandum was not signed by him, and since Goldie Norine referred to "I" instead of "we," the memorandum cannot be construed to include him as a purchaser of the McNabb property. He also relies on the provisions of the statute of frauds, section 30-11-111, MCA, as follows:

> "No agreement for the sale of real property or of any interest therein is valid unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged or his agent thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in the case of part performance thereof."

Anderson contends that not only did he not sign the memorandum but neither did any agent of his "thereunto authorized in writing."

There is substantial evidence in the record connecting Anderson to the agreement to buy the McNabb property. The memorandum itself was on Town and Country Real Estate stationery, which listed him on the letterhead along with Goldie Norine without any indication that he was anything but a co-owner of the realtor firm; he received one-half of the commission on the sale of the Flikkema property to the McNabbs; he typed the buy-sell agreement which became the basis of the McNabb-Flikkema contract; he was the agent who first worked with the McNabbs when the offers were made for the Branger Place. In that state of the evidence, the jury

could have believed that he was a co-owner of the realtor firm, and that Goldie Norine was acting for both when she signed the agreement to purchase the McNabb property.

Yet the statutory requirement in the Statute of Frauds that the authority of an agent be in writing to bind another in an agreement for the sale of real property has been with us since 1895, adopted from the Field Code. Before 1895, such authority was not required by statute to be in writing. Cobban v. Hecklen (1902), 27 Mont. 245, 70 P. 805. Since the requirement was made part of the Statute of Frauds, it has been the backbone of many decisions of this Court, denying claimed agencies not evidenced in writing by the party to be charged. Hartt v. Jahn (1921), 59 Mont. 173, 196 P. 153; Sunburst Oil and Gas Co. v. Neville (1927), 79 Mont. 550, 257 P. 1016; Mahoney v. Lester (1946), 118 Mont. 551, 168 P.2d 339; Schwedes v. Romain & Mudgett (1978), 179 Mont. 466, 587 P.2d 388. The claim here against Rod Anderson is of that specie. No writing exists in the evidence by which he appointed Goldie Norine to act as his agent in signing the memorandum on which the McNabbs rely.

In addition, no reliance can be placed in this case on the Uniform Partnership Act to eliminate the requirement that an agent's authority be in writing signed by the party to be charged under the Statute of Frauds. The partnership, if it be one, between Goldie Norine and Rod Anderson in Town and Country Real Estate can be bound by Goldie Norine in the purchase of real estate only if she were carrying on the business of the partnership in the usual way. Section 35-10-301, MCA. Nothing by way of evidence shows the purchase of real estate was the usual way of doing business by Town and Country Real Estate. For aught that appears,

Goldie's written memo was outside the usual course of the partnership business. The Statute of Frauds is applicable and Rod Anderson cannot be bound to the contract evidenced by the memo absent his authorization thereunto in writing. See Elis v. Mikelis (Cal. 1963), 32 Cal.Rptr. 415, 384 P.2d 7. We therefore hold that the evidence here does not support the verdict against Rod Anderson.

The third issue is the sufficiency of the damages. We find these to be sufficiently established in the record. The McNabbs eventually sold their property for $75,000. This was $20,000 less than the approximately $95,000 that Goldie Norine agreed the property was worth, and which she stated she was willing to pay. McNabbs proved additional interest damages of $21,345.52 based on $95,000 borrowed from First Security Bank of Bozeman at the prime rate plus 1% for the period March 6, 1979 to September 19, 1979, when the Kelly Canyon property was sold. They paid a commission of $4,500 and had other closing costs of $326 in selling the Kelly Canyon property. Thus there is substantial evidence in the record showing damages in excess of $45,000, justifying the jury verdict.

This case was submitted to the jury on two theories of liability, one for fraud, and the other for breach of contract. The court without objection instructed the jury as to damages for tort and for breach of contract. Under either approach, the damages found by the jury are sustainable.

The judgment here is affirmed as to Goldie Norine and the cause is reversed and dismissed as to Rod Anderson.

John C. Sheehy
Justice

We Concur:

_____
               Chief Justice

_____

_____

_____
               Justices