No. 89-104

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

GEORGE MADDUX, d/b/a MOM'S OLD FASHIONED GRAVY,

        Plaintiff, Appellant and Cross-Respondent,

   -vs-

LYNN BUNCH, FBS INSURANCE MONTANA HOINESS LaBAR, INC., and UNITED STATES FIDELITY AND GUARANTEE COMPANY,

        Defendants, Respondents and Cross-Appellants.

---

APPEAL FROM: District Court of the Thirteenth Judicial District.
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    James C. Capser, Billings, Montana

    For Respondent:

    Neil S. Keefer; Keefer, Roybal, Hanson, Stacey & Walen, Billings, Montana

Submitted on Briefs: Oct. 20, 1989

Decided: January 10, 1990

Filed:

Clerk

Justice John C. Sheehy delivered the Opinion of the Court.


Plaintiff George Maddux filed suit in the District Court, Thirteenth Judicial District, Yellowstone County, charging United States Fidelity and Guaranty Company (hereinafter USF & G) with breach of contract of insurance and unfair claim settlement practices. The jury found that a contract of insurance existed at the time of plaintiff's loss, defendant breached the contract, and owed plaintiff $23,378.95 in damages. On post-trial motion, the judgment was reduced to $7,792.98. From that judgment, both parties appeal. We affirm.

The issues raised by Maddux are:

1. Whether the District Court erred in granting USF & G's motion for directed verdict on the issue of punitive damages.

2. Whether the District Court erred in refusing to amend the jury's damage award to include lost profits.

3. Whether the District Court erred in reducing the award to $7,792.98.

4. Whether the District Court erred in denying pre-judgment interest on the award.

The issues raised on cross-appeal by USF & G are:

1. Whether the District Court erred in not granting USF & G's motion for a directed verdict.

2. Whether the court erred in not reducing the award to zero.

Appellant George Maddux conceived the idea of a commercial gravy manufacturing and sales business in October of 1985. His preparations for business included the purchase of a new building, ordering various pieces of equipment, including a freezer, and the electrical work necessary to

make the operation ready for business. In addition, Maddux contacted his insurance agent, Lynn Bunch, of Hoiness LaBar Agency, regarding insurance for the new operation.

It is uncontested by the parties that due to problems with the refrigeration system, 2,748 cases of gravy product ultimately spoiled and had to be disposed of. Maddux was paid $39,078.08 by the insurance carrier of the electrical contractor for faulty wiring, $25,000 by the insurance carrier of the refrigeration supplier Brodie-Dohrman, for improper installation and defective product, and $5,000 by Hoiness LaBar, Inc. and Lynn Bunch. Maddux proceeded to trial against USF & G, the insurance carrier for the Maddux policy.

Strongly contested at trial was whether coverage existed to insure against product spoilage and whether USF & G's refusal to pay constituted breach of contract and bad faith. The jury found that a contract existed, that USF & G breached the contract, and that the refusal to pay constituted bad faith. The jury awarded Maddux $23,378.95 for his losses, but declined to award Maddux anything for emotional distress, despite the determination of its existence.

USF & G made post-trial motions to reduce the jury verdict pro tanto to zero, and to tax costs. The court in its order stated:

> Now that the jury has rendered its verdict we have the hindsight to perceive the whole situation as it should have been. We now know that there was an insurance contract and that defendant should have provided coverage for plaintiff's damages for his loss of gravy in the amount of $23,378.95.

> We have known all along that when the insurance company declined coverage that plaintiff went out and did what his insurance company should have, to wit: recovered his damages for his gravy loss. Apparently plaintiff also recovered other damages unrelated to the insurance coverage, but it cannot

be seriously contested that plaintiff was [not] paid for his gravy loss. Accordingly, the jury verdict must be reduced (sic).

However, it is not proper to reduce the verdict to zero as requested by defendant because plaintiff incurred attorney fees in doing what we now know the insurance company should have done. Those fees are apparently a one-third contingency and the verdict should be reduced to one-third or $7,792.98 in order that plaintiff recover his attorney fees on the amount we now know he was damaged.

Plaintiff's motions for prejudgment interest and to amend the jury verdict were denied. This appeal and cross-appeal followed.

I.

Did the District Court err by granting USF & G's motion for a directed verdict as to punitive damages?

Maddux's claim for punitive damages is based on failure to conduct reasonable investigation of the claim.

Maddux maintains that USF & G intentionally avoided learning facts pertaining to coverage, such as what coverage Maddux believed he had acquired. In conference, counsel, prior to jury deliberation, conceded that USF & G did not seek out this information. However, the court states that this lack of fact-finding did not create a high degree of risk of harm to the substantial interests of Maddux, as required by § 27-1-221(2), MCA.

The court went on to state:

. . . plaintiff notes that the Court should let punitive damages go to the jury not only because plaintiff thinks that is right but also because if it is wrong it would be a simple matter for the Supreme Court to subtract out any punitive damages.

. . . [I]n the long run considering all the many cases these days in which punitive damages are sought this avenue is deceptive, misleading and inefficient. Reviewing courts are loathe to

- 4 -

> overturn juries and defendants should not have to run the risk that a jury will award punitive damages and reviewing court (sic) will not overturn a jury in cases where punitive damages should not have been considered by the jury in the first place. Judicial economy demands that the trial court not pass the buck. Judicial economy demands a trial court not present to a jury those issues for which insufficient evidence exists.

It is evident from the record that the testimony of Maddux and Agent Lynn Bunch was hopelessly conflicting. Section 27-1-221(5), MCA, states that "all elements of the claim for punitive damages must be proved by clear and convincing evidence." Here, the district judge, after hearing the evidence and observing the witnesses, was in the best position to make a determination whether the requirements of proof of punitive damages had been met. Tague v. John Caplice Co. (1903), 28 Mont. 51, 72 P. 297.

Maddux next contends that the District Court erred in refusing to amend the jury findings to conform to evidence presented on amount of loss. At issue is simply whether Maddux was entitled to a 40 percent markup from the value of the gravy. A breakdown of the figures is helpful.

| | |
|---|---|
| 2,748 cases at $12.96 per case | $35,614.08 |
| Less 40% | 14,245.63 |
| | $21,368.45 |
| Plus: cleanup costs | 1,610.50 |
| lost bar code | 400.00 |
| Jury computation total | $23,378.95 |

From the testimony and evidence, it is reasonably clear that Maddux had neither sold nor contracted to sell any of his product when the loss occurred. With that in mind and instructions on damages, the jury made its determination. Instruction no. 26 reads:

> Damages must be reasonable. If you should find that plaintiff is entitled to a verdict, you may award him only such damages as will reasonably

> compensate for such injury and damages as you find
> from a preponderance of the evidence in the case,
> that he has sustained as a proximate result of the
> incident.
>
> You are not permitted to award speculative damages.
> So you are not to include in any verdict
> compensation for any prospective loss, which
> although possible, is not reasonably certain to
> occur in the future.

An award of lost profits on a product with no proof of marketability might certainly be construed as speculative damage. From evidence and testimony presented, the jury determined what it thought to be reasonable damages. The District Court, presented with Maddux's motion to amend the jury's findings, did not see fit to substitute its judgment for that of the jury. Due to the speculative nature of lost profits, it was not error for the court to leave the jury verdict undisturbed. Section 27-1-311, MCA. Swanson v. St. John's Lutheran Hospital (1980), 189 Mont. 259, 615 P.2d 883.

Maddux's next contention is that the District Court erred in reducing the jury damages to $7,792.98.

Maddux argues that subrogation is not proper in this case, as the insurance policy states that USF & G will be subrogated to the insured's right of recovery "in the event of payment under this policy" and no payment under the policy has taken place. Further, Maddux contends that subrogation is simply an acquisition of rights of the insured against other parties, and those parties were released, all after USF & G refused payment. As further argument against subrogation, Maddux cites Western Media, Inc. v. Merrick (1988), 757 P.2d 1308, 1311, 1312, 45 St.Rep. 1212, 1216, which stated:

> It is the position of this Court that once a
> contract has been breached, its terms may not be
> unilaterally resumed. A non-breaching party has no

- 6 -

duty to perform the terms of the contract once it has been breached.

\* \* \* \*

It is a maxim of jurisprudence that "no one can take advantage of his own wrong." § 1-3-208, MCA. A party who breaches a contract cannot take advantage of his own act or omission to escape liability thereon. (Cites omitted.) Merrick's breach may not have been willful or intentional. However, the breach occurred and the contract was severed.

Maddux argues that the breach of the contract of insurance by USF & G severed the contract, and USF & G no longer has standing to assert any rights arising from the breached contract.

Maddux's claim against USF & G was unquestionably based on insurance coverage for spoilage of gravy product. The damages awarded by the jury were directly related to damages for spoilage. There is testimony and evidence that the pretrial settlements amounting to $69,078.08 compensated Maddux for his gravy loss. Maddux released those tortfeasors upon settlement, and then proceeded against USF & G for damages, including payment for gravy loss. The judge instructed the jury not to consider the settlements, that they should determine damages as if no settlements had occurred, and that the court would "make all adjustments to the award of damages as may be required by law.. . ."

Those pretrial settlements prevented contribution or indemnity claims by USF & G. In State ex rel. Deere & Co. v. District Court (1986), 224 Mont. 384, 730 P.2d 396, this Court determined that a joint or concurrent tortfeasor who settles with a claimant before judgment on the claim is entered in District Court is not subject to claims for contribution or indemnity from nonsettling joint or

concurrent tortfeasors against whom judgment may be rendered. With no possibility of indemnity, Maddux would stand to be paid for his gravy loss twice.

It has been the standard practice in Montana that a plaintiff's recovery is diminished pro tanto, that is, given a dollar credit based on the consideration paid by the settling tortfeasor. This encourages compromise, lends finality to such compromises, and provides a single satisfaction for a single injury. Deere, supra; Azure v. City of Billings (1979), 182 Mont. 234, 596 P.2d 460; Black v. Martin (1930), 88 Mont. 256, 292 P. 577. We hold that the precepts of Deere, et al. were correctly found by the lower court to apply in this case. Maddux is entitled to but a single recovery for his gravy loss, which he received in his earlier settlements. The lower court's reduction of the award to $7,792.98 was proper. The $7,792.98 adequately and fairly compensates Maddux for his attorney fees and costs in pursuing the settlements and this claim.

Maddux's final claim is that the District Court erred in refusing prejudgment interest under § 27-1-211, MCA. Section 27-1-211, MCA, provides as follows:

> Right to interest. Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such times as the debtor is prevented by law or by the act of the creditor from paying the debt.

Maddux claimed a loss of $35,614.08. The jury awarded $23,378.95. Clearly, Maddux did not show damages capable of being made certain by calculation as required by § 27-1-211, MCA. As the amount of damages due upon breach was not clearly ascertainable until determined by the trial court, prejudgment interest was not appropriate. Swenson v. Buffalo

Bldg. Co. (1981), ___ Mont. ___, 635 P.2d 978; Carriger v. Ballenger (1981), ___ Mont. ___, 628 P.2d 1106.

## II.

Issues on cross-appeal:

USF & G's first contention is that the District Court erred in not reducing the jury verdict to zero. USF & G maintains that, under _Deere_, Maddux had been fully credited for his gravy loss prior to trial. As such, the verdict should have been adjusted to zero. USF & G is correct in asserting that Maddux was compensated for his loss of gravy product. However, the $7,792.98 does not represent a portion of that loss. Rather, it is the court's determination of reasonable costs in the form of attorney fees. As the District Court noted, those costs are proper "because plaintiff incurred attorney fees in doing what we now know the insurance company should have done," i.e. investigate and pay the claim. As such, it was not error for the District Court to retain $7,792.98 in damages as reasonable attorney costs.

The second contention is that the District Court erred in not granting USF & G's motion for a directed verdict. A motion for a directed verdict is properly granted only in the complete absence of any evidence to warrant submission to the jury. Britton v. Farmers Ins. Group (1986), 221 Mont. 67, 721 P.2d 303. The court must view the motion in a light most favorable to the non-moving party. Dieruf v. Gollaher (1971), 156 Mont. 440, 481 P.2d 322. Clearly, there was evidence in this case of the existence of an insurance contract covering the loss, and subsequent breach by the insurer. As such, a directed verdict is not proper.

Affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____
J. A. Turnage
Chief Justice

_____
John Conway Harrison

_____
Diane G. Barz

_____
William E. Hunt

_____
R. C. McDonough

_____
Justices

- 10 -