No. 92-208

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

D. BARRY SCHRAMMECK

       Plaintiff, Counter-Defendant
       and Appellant,

   -v-

FEDERAL SAVINGS & LOAN INSURANCE CORP.
et. al.

       Defendants, Counter-Claimants
       and Respondents.

**FILED**

MAY 19 1993

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

              Alan J. Lerner (argued), Law Offices of Alan J.
              Lerner, Kalispell, Montana

       For Respondent:

              Mark L. Stermitz (argued for Fidelity Nat'l Title
              Ins. Co), Warden, Christiansen, Johnson & Berg,
              Kalispell, Montana; Colleen E. Ambrose (argued for
              FSLIC), Sullivan & Tabaracci, Missoula, Montana

Submitted: January 12, 1993
Decided: May 19, 1993

Filed:

_____
               Clerk

Justice R. C. McDonough Delivered the Opinion of the Court.

Schrammeck appeals two summary judgment orders of the Twentieth Judicial District Court, Lake County, certified as final pursuant to Rule 54(b), M.R.Civ.P. Reversed and remanded.

This case originated with a partnership dispute concerning the ownership of Woods Bay Marina on Flathead Lake and loans made using the property as collateral. Alton and Lee Ann Bowers (the Bowers) and Clark and Roxann Post (the Posts) were the record title owners of property consisting of Woods Bay Marina. In the original cause, filed in June of 1982, Schrammeck contended that he was a partner with Alton W. Bowers (Bowers) and Clark G. Post (Post), that the Marina was partnership property, and that his former partners excluded him from the partnership. A prior judgment by Judge Henson in the Fourth Judicial District Court, described below, settled this controversy among the partners. The dispute now centers on a loan transaction that the Bowers and the Posts made using Woods Bay Marina as collateral.

The pertinent issues on appeal are:

1. Whether the District Court erred by concluding that the Woods Bay Marina property did not belong to a partnership consisting of Schrammeck, Bowers and Post.

2. Whether the District Court erred by concluding that the Bowers and the Posts could encumber any portion of Woods Bay Marina without Schrammeck's consent.

3. Whether the District Court abused its discretion by denying Schrammeck leave to file a second amended complaint and supplemental pleading.

2

4. Whether the District Court erred by declining to award attorney fees to Schrammeck for successfully defending against the foreclosure of the trust indenture.

In Schrammeck's June 1982 complaint, he alleged that he entered an oral agreement with Bowers and Post in July 1980 to purchase, restore, and operate Woods Bay Marina as a partnership. Schrammeck further alleged that he worked at and managed the Marina from July 1980 until he was excluded from the partnership in late October 1980. Schrammeck filed and recorded a _lis pendens_ in connection with that suit on June 17, 1982.

About a year after Schrammeck recorded the _lis pendens_, Bowers approached the Montana Savings & Loan Association of Kalispell (the S & L) for a loan, using the Woods Bay Marina as collateral. Representatives of the S & L knew about the _lis pendens_, and loan officer John Prather recommended disapproval of the loan because ownership of the property was in dispute.

Prather informed Bowers that the loan request had not been approved because of the _lis pendens_. Bowers then told Prather that Schrammeck was not a partner or owner of Woods Bay Marina. Bowers insisted that Schrammeck's suit was a nuisance suit, and that Bowers and his wife owned the property along with the Posts. Prather replied that the S & L still would not make the loan because of the _lis pendens_.

Bowers then went to Fidelity National Title Insurance Company (Fidelity) and convinced it to insure the loan on the condition that the Bowers and the Posts hold Fidelity harmless and indemnify

3

it for any losses it might incur due to Schrammeck's claim underlying the lis pendens.

Based on Fidelity's insurance policy, the S & L agreed to loan the Bowers and the Posts $295,000 with the Marina as collateral. On June 15, 1983, the Bowers and the Posts executed a financing statement, evidencing S & L's security interest in the personal property of Woods Bay Marina. They signed a promissory note for $295,000 at the same time. They also executed and recorded a "deed of trust" purporting to assign the Woods Bay Marina real property to the S & L as security for the loan.

We have examined this "deed of trust" and determined that it is a trust indenture as defined in § 71-1-303(4), MCA; therefore, this opinion will refer to it as a trust indenture. This opinion will refer to the financing statement, the note, and the trust indenture collectively as the loan documents.

On November 21, 1983, Judge Henson, in the Fourth Judicial District, entered an order and judgment (hereafter Judge Henson's order) on the merits of Schrammeck's cause against Bowers and Post. Judge Henson's order declared Schrammeck the owner of an undivided one-third interest in the business, personal property and real property known as Woods Bay Marina.

Judge Henson's order also gave Bowers and Post the right to discharge and void Schrammeck's interest by making payments before specified dates. If the payments were not made, the order judicially recognized Schrammeck's one-third partnership interest

4

in the property and business. Schrammeck did not receive any payments and Judge Henson's order is not on appeal.

On June 14, 1984, Schrammeck filed suit against Bowers, Post, and the S & L. Among other things, Schrammeck alleged several torts and sought to dissolve and wind-up the partnership.

The Bowers and the Posts quitclaimed their interests in the Woods Bay Marina real property to Schrammeck on July 25, 1984, and also signed all of the Marina's personal property over to Schrammeck. Two days later, pursuant to a motion by Schrammeck, the court dismissed Bowers and Post from the suit.

In October 1984, Schrammeck filed an amended complaint against Fidelity and the S & L, seeking a court order declaring the trust indenture and the S & L's security interest in the personal property invalid. The complaint also alleged that the S & L and Fidelity committed several torts against him.

In August of 1985, the Federal Home Loan Bank Board declared the S & L insolvent and appointed Federal Savings & Loan Insurance Corporation (FSLIC) as receiver. The defendants in this case are, therefore, FSLIC and Fidelity.

FSLIC and Fidelity filed third-party complaints and counter-claimed against Schrammeck, the Woods Bay Marina Partnership, and its individual partners, Schrammeck, Bowers and Post to foreclose on the trust indenture.

The parties filed several motions for summary judgment and the District Court entered two separate orders on the motions. The

5

court certified these orders as final and they are before this Court on appeal.

In the summary judgment order dated August 30, 1991, the District Court acknowledged that Bowers, Post, and Schrammeck were partners in Woods Bay Marina. The court determined that each of the partners had the authority to bind the Woods Bay Marina Partnership in the usual course of business. The court ruled that the Bowers and the Posts did not exercise their authority as partners, and thus did not bind the partnership to the promissory note. The court also ruled that neither Schrammeck nor the partnership were debtors under the security agreement or grantors under the trust indenture.

In the summary judgment order dated January 7, 1992, the District Court ruled that Woods Bay Marina was not partnership property, but rather, Bowers, Post, and Schrammeck had individual interests in the property. The court also acknowledged its previous determination that the Bowers and the Posts had authority to bind the Woods Bay Marina Partnership, but determined they had not exercised their authority.

This opinion will refer to more detailed facts as they are pertinent to the discussion.

Our review of the District Court's conclusions of law is plenary; we determine whether the court's conclusions are correct. Steer Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

6

I.

Did the District Court err by concluding that the Woods Bay Marina property did not belong to a partnership consisting of Schrammeck, Bowers and Post?

Judge Henson's order disposes of this issue. In November of 1983, Judge Henson ruled that:

2. The Plaintiff [Schrammeck] is the owner of an undivided one-third interest in the business and property known as Woods Bay Marina, Woods Bay, Lake County, Montana.

***

3. Defendants [Bowers and Post] may discharge and void Plaintiff's ownership interest and claims . . . by paying to the Plaintiff [certain sums by certain dates].

***

In the event the Defendants fail to perform in the above-described fashion in a timely manner . . . paragraph 4 of this Order and Judgment shall become effective and controlling.

4. In the event the Defendants fail to make payment as stated in paragraph 3 in a timely fashion, in addition to his one-third ownership interest as stated in paragraph 2 of this Order and Judgment, the Plaintiff shall be deemed a one-third partner in the property and business described in paragraph 2. The partnership shall be deemed dissolved as of November 21, 1983; the Plaintiff shall be deemed to have been excluded from the partnership and enjoyment of the partnership property . . . and, the Defendants and parties acting in privity with them shall be deemed to have had exclusive control, enjoyment and possession of the entire partnership property and have continued the business without winding the same up or liquidating the same, to the exclusion of the Plaintiff since October 16, 1980. In the event this paragraph becomes effective, the Plaintiff shall have all rights, causes of action and remedies regarding dissolution, accounting, liquidation and duties owed him as a partner pursuant to the laws of the State of Montana. In the event this paragraph comes into effect, the Plaintiff's one-third partnership interest in the property and business identified herein is hereby judicially declared. (emphasis added).

Bowers and Post did not make the required payments to Schrammeck, therefore paragraph 4 of Judge Henson's order and

7

judgment became effective. The effect of the order was to judicially declare Schrammeck's partnership interest in the Woods Bay Marina, including both the realty and personalty. The order also declared that he had been excluded from the partnership since October 16, 1980 and alluded to his right to wind up the partnership after the dissolution. See § 35-10-601, MCA, et seq. (explaining the rights and duties associated with dissolution and winding up of a partnership). Thus, according to Judge Henson's order, the Woods Bay Marina real and personal property belonged to a partnership consisting of Bowers, Post, and Schrammeck. Judge Henson's order was not appealed; therefore, we conclude that the District Court erred by determining that the Woods Bay Marina was not partnership property.

## II.

Did the District Court err by concluding that the Bowers and the Posts could encumber any portion of the Woods Bay Marina property without Schrammeck's consent?

As stated above, the Bowers and the Posts were the record owners of the Woods Bay Marina which was partnership property. They executed a trust indenture purporting to assign the property to the S & L as security for a loan. The District Court ruled that the Bowers and the Posts had authority to bind the partnership, but they did not exercise it when encumbering the Woods Bay Marina property. The court determined that the Bowers and the Posts, respectively, encumbered their individual one-third interests in the property.

8

Because the Woods Bay Marina was partnership property, however, the Bowers and the Posts could not assign any individual interests in the property. "A partner is co-owner with the other partners of specific partnership property holding as a tenant in partnership." Section 35-10-502(1), MCA. "The incidents of tenancy in partnership are such that a partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property." Section 35-10-502(2)(b), MCA. This rule applies regardless of the formal legal manner in which the property is held. See Matter of Estate of Palmer (1985), 218 Mont. 285, 290-93, 708 P.2d 242, 245-47.

Woods Bay Marina, including both the realty and the personalty, was partnership property. Therefore, even though the Bowers and the Posts were the record title holders, they could not assign their individual interests in it, except in connection with the assignment of all of the partners' rights in the property. Thus, the District Court erred in determining that the Bowers and the Posts had authority to bind the partnership but encumbered only their individual one-third interests.

FSLIC and Fidelity argue that even if the Bowers and the Posts did not encumber their individual interests, they encumbered the partnership's interest in the property. Schrammeck argues that the Bowers and the Posts did not have authority to encumber the partnership's property without consent of all the partners, and therefore, the purported encumbrances had no effect. The District

9

Court ruled in its August 1991 summary judgment order that the loan documents did not bind either Schrammeck or the Woods Bay Marina Partnership consisting of Bowers, Post, and Schrammeck.

The first step in analyzing whether the loan documents bound the partnership is to determine whether on their face they purport to bind the partnership. FSLIC argues that the language of the loan documents is ambiguous and gives rise to a reasonable inference that the obligation was a partnership debt. FSLIC contends that the ambiguities should have been clarified by parol evidence. We conclude that parol evidence was unnecessary for that purpose, however, because the loan documents are not ambiguous and on their face purport to finance the Woods Bay Marina project and bind the Woods Bay Marina Partnership.

The trust indenture incorporates by reference the note and the financing statement. The note names the debtors as follows: "Alton W. Bowers, Lee Ann Bowers, husband and wife (50%); and Clark G. Post, Roxann Post, husband and wife (50%); Partners hereinafter referred to as obligors." The financing statement identifies the debtors as "Alton W. Bowers and Lee Ann Bowers, his wife and Clark G. Post and Roxann Post, his wife, dba: Woods Bay Marina."

The trust indenture identifies the grantors as follows: "Alton W. Bowers & Lee Ann Bowers, husband and wife, and Clark G. Post & Roxann Post, husband and wife, jointly and individually, of Woods Bay Marina, Bigfork, Montana." The trust indenture also states: "The indebtedness evidenced by the Note is intended to finance the project known as Woods Bay Marina." Thus the loan

10

documents, read as a whole, purport to bind the Woods Bay Marina Partnership, which Bowers represented to the Bank as consisting of only the Bowers and the Posts.

We note that the Bowers executed the promissory note, the financing statement, and the trust indenture granting the Woods Bay Marina real property to the S & L. Alton Bowers signed these loan documents as attorney in fact for Clark and Roxann Post.

The next step in analyzing whether the loan documents bound the partnership is to determine whether Bowers had authority under § 35-10-301(1), MCA, to enter the loan transactions.

Although the Bowers and the Posts were the record title holders of the Woods Bay Marina, it was partnership property of the Woods Bay Marina Partnership, which consisted of the three partners--Bowers, Post, and Schrammeck.

> Where title to real property is in the name of one or more or all the partners . . . a conveyance executed by a partner in the partnership name or in his own name passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of 35-10-301(1).

Section 35-10-302(4), MCA. Therefore, the trust indenture is a valid assignment of the partnership's interest in the property only if it was executed within Bowers' authority under the provisions of § 35-10-301(1), MCA. That statute states:

> Every partner is an agent of the partnership for the purposes of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom he is dealing has knowledge of the fact that he has no such authority.

11

Section 35-10-301(1), MCA (emphasis added).

The first step in analyzing whether Bowers acted within the authority of that statute is to determine whether he was apparently carrying on partnership business in the usual way when he executed the loan documents to obtain a loan to pay partnership debts. We need not determine whether using partnership property as collateral without the permission of all of the alleged owners of the property is appropriate when the ownership of the property is in dispute and a notice of lis pendens has been recorded. Because, as discussed below, Bowers had no authority to enter the loan transactions on the partnership's behalf and the S & L knew it.

The second step is to determine whether Bowers in fact had no authority to execute the loan documents on behalf of the partnership. Bowers signed as attorney in fact for the Posts. However, he did not have Schrammeck's permission to execute the loan documents.

Indeed, Bowers represented to the S & L that Schrammeck was not a partner and Schrammeck therefore, was not included as a party to the loan transaction documents. Schrammeck by then had filed suit alleging that Bowers and Post had excluded him from the partnership and disputing the ownership of Woods Bay Marina. Schrammeck had also recorded a lis pendens providing notice of the pending suit. Under these circumstances, Bowers had no authority to execute documents to obtain a loan, for a partnership including Schrammeck, using the disputed property as collateral. Thus, the execution of the loan documents was unauthorized.

12

A partner can still bind the partnership to an unauthorized transaction if all of the other partners ratified the loan either explicitly or by knowingly receiving or retaining the benefits of the unauthorized loan transaction. See Restatement of Agency (Second) §§ 98-99. However, the respondents did not argue that Schrammeck ratified the loan transaction. Furthermore, although the record shows the purposes for which the S & L disbursed the loan, it does not indicate what actually became of the money, and there is insufficient evidence in the record to determine whether Schrammeck knowingly retained the benefits of the loan.

The third step is to determine whether the S & L knew that Bowers did not have authority to enter the loan transactions when it issued the loan. See § 35-10-301(1), MCA. As the following discussion reveals, the S & L did know that Bowers acted without authority when it executed the loan documents and issued the loan.

Schrammeck's lis pendens gave notice that he had filed an action against Bowers and Post to dissolve and wind up a partnership dealing with the Woods Bay Marina real property, to enforce certain contract rights, and to secure a judgment on the dissolution and contract. Schrammeck prevailed in the suit underlying the lis pendens; therefore, the parties are bound by Judge Henson's order declaring Schrammeck's partnership rights. See Fox v. Clarys (1987), 227 Mont. 194, 196, 738 P.2d 104, 105.

In Fox we stated: "The doctrine of lis pendens was created to hold the subject matter of litigation within the jurisdiction and control of the court during the pendency of an action so that any

13

final relief granted by the court would be at once binding and effective. [citation omitted] This doctrine generally renders third persons who subsequently purchase or encumber an interest in the subject property bound by the final disposition of the action." Fox, 738 P.2d at 105. Thus FSLIC, as the S & L's successor in interest, is bound by Judge Henson's declaration that Woods Bay Marina was partnership property and that Schrammeck was a partner who was excluded from the partnership in October of 1980.

In addition, the S & L's loan officer who handled the loan in question, John Prather, acknowledged that the S & L actually knew Bowers did not have authority to execute the loan documents. Prather stated that "[i]f D. Barry Schrammeck was a partner, his express consent to this particular transaction would have been required and his signature would have been required on the loan papers, trust deed and, note." After Prather denied Bower's loan request, Bowers represented that Schrammeck had filed a nuisance suit. Prather responded that the S & L "still would not make the loan because of the lis pendens." Thus, the S & L knew that Bowers did not have authority to execute the loan documents on behalf of the partnership.

Because the S & L knew that Bowers did not have authority to execute the loan documents, the trust indenture did not pass any interest in the Woods Bay Marina realty to the S & L. See § 35-10-302(4), MCA. In addition, neither the financing statement nor the note bound the partnership, because Bowers did not have authority to act for the partnership in executing them and the S & L knew

14

that he lacked such authority. See § 35-10-301(1), MCA. The trust indenture, financing statement, and note were invalid as to the Woods Bay Marina Partnership and the District Court erred in concluding that these loan documents had any effect.

Schrammeck alleged that Fidelity and FSLIC committed several tortious acts against him. He alleged slander of title, negligence, conspiracy, and constructive fraud. The District Court dismissed these counts on summary judgment partly based on its erroneous conclusion that the loan documents bound the Bowers' and the Posts' individual interests. We conclude that the court should reconsider these issues if Schrammeck presents them on remand.

III.

Did the District Court abuse its discretion by denying Schrammeck leave to file a second amended complaint and supplemental pleading?

The District Court certified two specific partial summary judgment orders for appeal as allowed by Rule 54(b), M.R.Civ.P. Neither these orders nor Schrammeck's notice of appeal mentions the District Court's order denying Schrammeck's motion for leave to file supplemental pleadings or a second amended complaint. Therefore, the issue is not properly before this Court and we decline to rule on it.

IV.

Did the District Court err by declining to award attorney fees to Schrammeck for successfully defending against the foreclosure on the trust indenture?

The District Court denied Schrammeck's motion for summary judgment on the issue of attorney fees, reasoning that Shrammeck

15

was "not a party to any of the written instruments which contain provisions for the payment of attorney fees, and there exists no statutory authority for the payment of attorney fees to either party." We note that in the answer to Schrammeck's October 1984 amended complaint, the S & L and Fidelity counterclaimed against the Bowers, the Posts, and Schrammeck as a partnership to judicially foreclose on the trust indenture. We direct the court on remand to follow § 71-1-233, MCA, which requires the court to allow attorney fees in an action to foreclose a mortgage of real property, and to the case law interpreting that statute as reciprocal. See Bermes v. Sylling (1978), 179 Mont. 448, 464, 587 P.2d 377, 387.

In summary, the loan transaction documents were invalid. We reverse and remand for further proceedings.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

16

Justice Fred J. Weber concurs and dissents as follows:

I agree with the analysis of the majority up to the point of its application of § 35-10-301(1), MCA, which provides in pertinent part:

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument . . . binds the partnership unless the partner so acting has in fact no authority to act . . . <u>and the person with whom he is dealing has knowledge of the fact that he has no such authority</u>. (Emphasis supplied.)

While I agree with the District Court determination that Bowers in fact had no authority to enter the loan transaction on the partnership's behalf, I do not find a factual basis to conclude that the S & L knew of that lack of authority. Even though Bowers did not have authority to execute the documents, his action could bind the partnership if the S & L did not know of his lack of authority. As stated in the majority opinion:

> A partner can still bind the partnership to an unauthorized transaction if all of the other partners ratified the loan either explicitly or by knowingly receiving or retaining benefits of the unauthorized loan transaction. . . .

There are no facts in the summary judgment record before us to demonstrate whether or not Schrammeck knowingly received and retained the benefits of this unauthorized loan transaction.

The majority points out that the record does not indicate what became of the money and concludes there is not sufficient evidence to determine whether Schrammeck did knowingly retain the benefits of the loan. This appeal is from a summary judgment determination by the District Court. I conclude there is an issue of material

17

fact on whether or not Schrammeck knowingly received or retained the benefits of the unauthorized loan transaction. I therefore conclude that summary judgment is inappropriate and that this matter should be remanded for determination of that issue of material fact.

The majority points out that Schrammeck became the successor in interest of both the other partners by reason of their conveyance to him of all of their interest. As a result, Schrammeck became the record owner of the property subject to the loan transaction. It then becomes essential to determine if Schrammeck knowingly retained the benefits of the loan transaction.

The next issue of fact is whether or not the S & L actually knew that Bowers did not have authority to enter into the loan transaction. This issue is raised by the last sentence of § 35-10-301(1), MCA, as above quoted. The majority points out that Schrammeck's lis pendens gave notice that he had filed an action to dissolve and wind up the partnership, and points out that he subsequently prevailed in that action. While all parties are bound by the ultimate determination in the action in which the lis pendens was given, that determination does not establish that the S & L had knowledge of any lack of authority at the time the instruments were executed.

The majority concludes that the S & L actually "knew Bowers did not have authority to execute the loan documents." This conclusion is based upon Prather's statements that if Schrammeck was a partner, his express consent would have been required and his

18

signature on the various loan documents would have been required, as well as the further statement by Prather that the S & L would not make the loan because of the lis pendens. However, those statements by Prather are not an adequate basis for the following conclusion of the majority:

> Thus, the S & L knew that Bowers did not have authority to execute the loan documents on behalf of the partnership.

The statements by loan officer Prather only demonstrate that as a matter of loan policy, Schrammeck would have been required to execute the documents if, in fact, he were a partner.

The majority next concludes the S & L knew that Bowers did not have authority to execute the loan documents, and as a result, the trust indenture failed to pass any interest in the described property. There is no evidence in the summary judgment record which demonstrates the S & L actually knew Bowers did not have authority at the time of the execution of the loan documents. As a result, there is no factual basis from which a court may conclude whether or not Bowers could bind the partnership to the unauthorized transaction because other partners ratified by knowingly receiving or retaining benefits of the loan transaction.

For the foregoing reasons, I conclude it was improper to affirm the summary judgment decision. Justice requires a remand for determination of the material facts. Upon remand, after a factual determination as to whether Schrammeck knowingly received and retained the benefits of the entire loan transaction, the

19

District Court could properly decide if Schrammeck is bound by the provisions of § 35-10-301(1), MCA.

I would remand for determination by the District Court of the issues of material fact.

_____
Justice