No. 01-503

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 357

WILLIAM BALTRUSCH,

       Respondent and Cross-Appellant,

   v.

OTTO BALTRUSCH, JR.,

       Appellant and Cross-Respondent.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and for the County of Hill, Cause No. DV 92-029
The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellant and Cross-Respondent:

          James A. Patten, West Patten Bekkedahl & Green, Billings, Montana

      For Respondent and Cross-Appellant:

          K. Dale Schwanke, Jardine Stephenson Blewett & Weaver, Great Falls, Montana

                 Submitted on Briefs:  April 25, 2002

                        Decided:  December 18, 2003

Filed:

_____

                 Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Otto Baltrusch, Jr. (Otto) appeals the judgment entered by the Twelfth Judicial District Court, Hill County, finding that all of the partnership property jointly owned by Otto and William Baltrusch (William) be liquidated, with the proceeds distributed equally between them.

¶2     We address the following issues on appeal and affirm:

¶3     1.     Did the District Court err in determining that Otto received a benefit from the payment of life insurance premiums when that issue was not included in the District Court's final pretrial order?

¶4     2.     Did the District Court err in determining that substantial credible evidence existed to find that William appropriately created and operated the business established with his wife?

¶5     We address the following issues on cross appeal and affirm:

¶6     3.     Did the District Court err in not finding Otto liable for his unauthorized release of specific leases to his sons?

¶7     4.     Did the District Court err in not finding Otto liable for (1) his conversion of Farm Partnership equipment; (2) his failure to charge rent for his sons' use of Farm Partnership equipment; and (3) personal credit card expenses for which the Farm Partnership paid?

¶8     5.     Did the District Court err in not requiring Otto to reimburse the Farm Partnership for the cost of two vehicles both Otto and his wife used?

¶9     6.     Did the District Court err in finding that it did not have jurisdiction to determine the liability between William and Otto regarding the amounts claimed due by Otto's sons?

¶10    7.     Did the District Court err in not awarding William prejudgment interest on the $94,607 judgment and on the excess compensation taken by Otto from the various businesses both William and Otto owned?

¶11    8.     Did the District Court err in not considering the tax implications on William

regarding his withdrawals from the Farm Partnership when the District Court determined how both William and Otto's interests should be equalized?

## FACTUAL AND PROCEDURAL BACKGROUND

¶12 Otto and William are brothers who formed Baltrusch Land and Cattle Company around 1940. They expanded their company into several other businesses as the years progressed (all of which are hereinafter collectively referred to as "the Farm Partnership").

¶13 William devoted his time to managing the construction companies of the Farm Partnership, while Otto devoted his time to managing the farming enterprises of the Farm Partnership.

¶14 Obtaining bonding contracts was important to the success of the Farm Partnership's construction companies. In order to obtain these contracts, both Otto and William signed personal indemnities throughout the years for the Farm Partnership. However, starting in 1990, Otto refused to sign a personal indemnity. As a result, William had difficulties obtaining bonding contracts, and, ultimately, formed B&B Corporation (B&B) with his wife. Through the creation of B&B, William was able to obtain more bonding contracts. However, William still deposited the profits from certain bonding jobs within the Havre service area and all other jobs that did not require a bond to Baltrusch Construction (one of the construction companies of the Farm Partnership).

¶15 Also over the years, the Farm Partnership obtained the Connolly and Graham Leases (the Leases). These farm plots were small in comparison to the Farm Partnership's remaining acres. Otto's sons, Gary Baltrush (Gary) and Greg Baltrush (Greg) helped farm

3

the Leases and knew the land well.

¶16 However, as years past, Otto realized that his leasing options on the Leases were no longer economically advantageous, so Otto asked Gary whether he and Greg would be interested in acquiring the Leases.

¶17 At that point, Gary asked the owner of one of the Leases about his prospects for acquiring the Leases. This owner testified that she was "satisfied to have Gary and Greg" farm the Leases.

¶18 Before transferring the Leases to Gary and Greg, Otto contacted his attorney and inquired into his options. His attorney advised him that he could not establish a ficticious entity to realize more Agricultural Stabilization and Conservation Services' (ASCS) payments, as Otto was concerned about the new ASCS payment limit and how that limit would affect the economic viability of the Leases. After consulting with his attorney, Otto transferred the Leases to Gary and Greg, who formed G&G Corporation.

¶19 In forming G&G, Gary and Greg needed a tractor, amongst other equipment. Otto transferred a tractor owned by the Farm Partnership to G&G with the agreement that G&G would pay for it by paying Otto's hired hand's wages. G&G did so. In addition to running their business, both Gary and Greg continued to work on the farming enterprises of the Farm Partnership.

¶20 As William and Otto's relationship began to deteriorate, the Farm Partnership did as well and this litigation ensued. During this litigation, William and Otto entered into a Partial Settlement Agreement, whereby both agreed that the Farm Partnership properties would be divided equally between them, subject to their respective claims.

¶21 The District Court made many findings, ultimately ordering that the Farm Partnership properties, both real and personal, owned jointly by William and Otto be sold, with the proceeds divided equally.

¶22 Both Otto and William raised several issues and cross-issues on appeal based on the District Court's judgment. As they become applicable, additional facts will be discussed in accordance with each issue raised.

## STANDARD OF REVIEW

¶23 We review a district court's findings of fact to determine whether the findings are clearly erroneous. *State v. Perry* (1997), 283 Mont. 34, 36, 938 P.2d 1325, 1327. In determining whether the findings are clearly erroneous, we review whether the findings in the record are supported by substantial evidence. *Ace Leasing, Inc. v. Boustead*, 2002 MT 213, ¶ 16, 311 Mont. 285, ¶ 16, 55 P.3d 371, ¶ 16. If the findings are supported by substantial evidence, we then determine if the district court misapprehended the effect of the evidence. *Ace Leasing, Inc.*, ¶ 16. If the findings are supported by substantial evidence and the district court did not misapprehend the effect of the evidence, we determine whether the record shows a mistake has been committed. *Ace Leasing, Inc.*, ¶ 16. We review a district court's conclusions of law for correctness. *Kingston v. Ameritrade, Inc.*, 2000 MT 269, ¶

5

9, 302 Mont. 90, ¶ 9, 12 P.3d 929, ¶ 9.

## DISCUSSION

¶24 **1.** **Did the District Court err in determining that Otto received a benefit from the payment of life insurance premiums when that issue was not included in the District Court's final pretrial order?**

¶25 Otto argues that the issue of whether personal life insurance premiums paid by the Farm Partnership were chargeable to him was not an issue raised in the final pretrial order. As such, he contends that the District Court erred in finding that Otto owed the Farm Partnership $73,254.

¶26 William argues that the life insurance premiums chargeable to Otto himself were addressed in various components of the pretrial order. Regardless, he contends that the District Court received evidence from Otto and his wife without objection about the life insurance premiums, and that the stipulated exhibits also contained such evidence. Therefore, William argues that Otto waived his right to claim error now on appeal. We agree.

¶27 We have repeatedly held that we will only consider on appeal objections made at trial which are timely and specific. *Kizer v. Semitool, Inc.* (1991), 251 Mont. 199, 207, 824 P.2d 229, 234. Indeed, Montana's Rules of Evidence state that error may not be predicated on the admission of evidence unless the objection to such admission was timely and states the grounds for the objection. Rule 103(a)(1), M.R.Evid. Objections which are not timely are not heard on appeal, as the time has passed to avoid or correct the error. *State v. Vandersloot*, 2003 MT 179, ¶ 23, 316 Mont. 405, ¶ 23, 73 P.3d 174, ¶ 23. An objection is

6

timely when it is made as soon as the grounds for the objection become apparent. *Kizer*, 251 Mont. at 207, 824 P.2d at 234.

¶28 The District Court heard testimony regarding the life insurance premiums paid by the Farm Partnership for Otto and his wife. The District Court also reviewed numerous exhibits upon which it determined the amount Otto owed in life insurance premiums. Otto did not object to any of the testimony received, and, in fact, stipulated to the admission of the exhibits upon which the District Court determined the amount. Thus, Otto waived his right to claim error now on appeal, and the District Court did not err in finding that the insurance premiums were chargeable to Otto.

¶29 **2. Did the District Court err in determining that substantial credible evidence existed to find that William appropriately created and operated the business he established with his wife?**

¶30 Otto argues that B&B should be considered an asset which William and he jointly own, since B&B used Baltrusch Construction personnel and equipment in its operations. Otto further contends that the level of bonding contracts obtained by B&B did not change after Otto refused to sign additional indemnity agreements. Also, Otto contends that William breached his fiduciary duty when he created and operated B&B, which he argues actually prospered at the expense of Baltrusch Construction.

¶31 William contends that substantial credible evidence exists to find that he and his wife alone created and operated B&B, and, as such, B&B is not a Farm Partnership asset which should be equally divided between he and Otto. In support of this contention, William argues that the level of bonding contracts was indeed affected when Otto refused to sign additional indemnity agreements, and, as a result, he and his wife alone created B&B. Further, William maintains that it is undisputed that Otto was not involved in the operation of B&B; that B&B paid rent to Baltrusch Construction for the equipment it used; and that income from some construction projects was donated by B&B to Baltrusch Construction. In fact, B&B provided Baltrusch Construction the income from the bonded jobs within the Havre service area and from all other projects which did not require a bond.

¶32 Substantial credible evidence is defined as "evidence which a reasonable mind might accept as adequate to support a conclusion." *Lee v. Kane* (1995), 270 Mont. 505, 510, 893 P.2d 854, 857. Indeed, evidence may be substantial although it may be "inherently weak and conflicting." *Lee*, 270 Mont. at 510, 893 P.2d at 857.

¶33 Property is presumed to be partnership property if it was purchased with partnership assets. Section 35-10-203(4), MCA. If the property was not purchased with partnership assets, then a district court looks to a number of factors in determining whether the partners intended that property to be a partnership asset. *See In re Estate of Bolinger*, 1998 MT 303, 292 Mont. 97, 971 P.2d 767.

¶34    Here, Otto admitted that he signed personal indemnities, which were needed to obtain bonding jobs in the construction realm, in 1989, but refused to do so in 1990. It was undisputed that Otto had no part in operating B&B, that B&B paid rent to Baltrusch Construction for the equipment it used, and that income from some of the construction projects was donated by B&B to Baltrusch Construction. As difficulties persisted for William in finding bonding contracts, William and his wife formed B&B. However, even after forming B&B, the profits from the bonding jobs within the Havre service area and all of the other projects that did not require a bond went to Baltrusch Construction. In addition, no evidence existed that B&B gained assets at the expense of Baltrusch or that it competed with Baltrusch Construction. Based on this evidence, the District Court correctly found that B&B was not a partnership asset, for it was not purchased with partnership assets, nor was it the partners' intent to make it a partnership asset. Therefore, we hold that the District Court did not err in finding that B&B was not a partnership asset.

¶35    We now turn to the issues raised by William on cross appeal.

¶36    **3.    Did the District Court err in not finding Otto liable for his unauthorized release of specific leases to his sons?**

¶37    William argues that Otto breached his duty of loyalty when he transferred the Leases to his sons without initially obtaining William's consent to the transfer. He contends that the transfer was not made in the regular course of business, and that the appropriate inquiry is whether Otto breached his fiduciary duty, and not whether the transfer was in the best interests of the Farm Partnership.

9

¶38 Otto argues that the transfer of the Leases was in the regular course of business and was not a breach of his fiduciary duty, since continued farming on the Leases was uneconomic to both Otto and the Farm Partnership. Otto contends that William does not assert how Otto was economically benefitted by the transfer. Further, he contends that the record does not evidence that Otto terminated the Leases for contrary reasons, especially given that he sought legal counsel before terminating the Leases.

¶39 The District Court found that a legitimate financial reason existed for Otto in terminating the Leases, and that Otto's decision was made in the regular course of business. We agree.

¶40 Under Montana's Uniform Partnership Act, a partner's actions can bind a partnership if that partner's actions are within the ordinary course of the partnership business. Section 35-10-301(1), MCA. Specifically, this statute states:

> [E]ach partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course of the partnership business or business of the kind carried on by the partnership binds the partnership unless the partner has no authority to act for the partnership in the particular matter and the person with whom the partner is dealing knows or has received a notification that the partner lacks authority.

¶41 The legislature, in 1993, amended the above-quoted statute, changing a partner's actions in "carrying on in the usual way the business of the partnership," § 35-10-301(1), MCA (1993), to the above-quoted a partner's actions "within the ordinary course of the partnership business," § 35-10-301(1), MCA.

¶42 No Montana case has interpreted the "within the ordinary course of the partnership

10

business" language, but given that the amended language is similar to the prior language, our cases interpreting the prior language are instructive.

¶43     We addressed whether one of the partners in *Schrammeck v. Federal Sav. & Loan Ins.* (1993), 258 Mont. 391, 853 P.2d 702, acted within his authority when he executed loan documents on behalf of the partnership without consent of the third partner, using partnership property as collateral. Specifically, the partner signed loan papers as attorney-in-fact when he was aware that the third partner was in the process of winding up the partnership. We held that because (1) the partner represented to the bank that the third partner was indeed not a partner; and (2) because the third partner had filed suit and recorded a *lis pendens* action, the partner had no authority to execute loan documents using disputed partnership property as collateral. *Schrammeck*, 258 Mont. at 399-400, 853 P.2d at 708.

¶44     Similarly, we held in *McNabb v. Norine* (1983), 204 Mont. 330, 664 P.2d 927, that the partner was not carrying on the business of the partnership in the usual way. In so holding, we noted that the purchase of real estate through a memorandum agreement was not how the partnership usually did business. *McNabb*, 204 Mont. at 338, 664 P.2d at 931.

¶45     Here, unlike the partner in *Schrammeck*, Otto did not act out of his authority as a partner. Otto alone took care of the Leases for over 30 years, and did not bind William to something he knew William did not desire, like the partner in *Schrammeck* did. William conceded that Otto alone managed the Leases. Otto consulted an attorney regarding his options for the Leases before determining that transfer of the Leases was the best option. Only after he discussed with his attorney this fact did he ask Gary about transferring the

11

Leases to Gary and Greg. Gary and Greg had farmed the Leases for years, and the landlord of the Graham lease in fact testified that she was satisfied in having them take over the Leases. In addition, the transfer of the Leases did not harm the Farm Partnership, as the partner's actions in *Schrammeck* did, for continued farming on the Leases was no longer economically viable under the ASCS program. Unlike the partner in *McNabb*, the ordinary course of the Farm Partnership consisted of Otto managing the Leases and Gary and Greg farming the Leases. The transfer of the Leases, therefore, was not out of the ordinary, like the partner's actions were in *McNabb*. Thus, we hold that the District Court did not err in not finding Otto liable on this issue.

¶46 **4. Did the District Court err in not finding Otto liable for (1) his conversion of Farm Partnership equipment; (2) his failure to charge rent for his sons' use of Farm Partnership equipment; and (3) personal credit card expenses for which the Farm Partnership paid?**

¶47 While both parties raised the following arguments separately, because we hold that each argument targets a duty of loyalty owed, we address the following arguments together.

¶48 William argues that Otto's transfer of certain Farm Partnership equipment without receipt of any consideration constituted an act of self-dealing, which was a violation of Otto's duty of loyalty and duty of care. In support of this contention, William argues that specifically Otto had a duty to disclose the transfer and secure William's consent under § 35-10-405(2), MCA.

¶49 William further argues that Otto was obligated to account for the personal expenses he charged to the Farm Partnership. He maintains that Otto must prove that various charges

12

were not for Otto's personal benefit. In so doing, William contends that the District Court erred in finding that assessment of Otto's obligation could not be accurately based on random accounting samples because the law only mandates that damages be proven with a reasonable degree of certainty.

¶50 Otto argues that he only transferred a tractor, for which he received compensation in the form of payment of a hired hand's wages and other services. All other purportedly transferred equipment, Otto maintains, were retained by the Farm Partnership and were never titled over to or used by G&G.

¶51 Otto further argues that the District Court properly refused to allow sampling of all of the invoices in the middle of the trial because William could have analyzed these invoices before and did not.

¶52 Partners owe a duty of loyalty and a duty of care to the partnership. Section 35-10-405(1), MCA. Specifically, a partner's duty of loyalty is limited to:

> (2)(a) account to the partnership and hold as trustee for it any property, profit, or benefit derived . . .
>> (i) from a use or appropriation by the partner of partnership property; and
>
> (2)(c) refrain from competing with the partnership in the conduct of partnership business before the dissolution of the partnership without the consent of the other partners.

Sections 35-10-405(2)(a)(ii), (2)(c), MCA.

¶53 We hold that Otto did not breach his duty of loyalty, as his duty was to account to the Farm Partnership for any property or benefit he received from use or appropriation of Farm Partnership property and that he did just that. The record reflects that G&G paid for the

13

tractor it received from Otto by paying the wages of Otto's hired hand. Further, to the extent that G&G used Farm Partnership equipment in performing B&B tasks, such use was minimal in comparison to the work G&G also provided the Farm Partnership. In addition, Otto's wife testified that she separated personal credit card charges from those of the Farm Partnership. Because William had ample opportunity to inspect the credit card invoices, we conclude that the District Court did not err in finding random sampling insufficient to charge Otto for all of the years of credit card expenses. Under Otto's duty of loyalty, he needed to account for the personal credit card expenses. He did that. Therefore, we hold that the District Court did not err in not finding Otto liable for: (1) the conversion of Farm Partnership equipment; (2) his failure to charge his sons rent for use of Farm Partnership equipment; and (3) personal credit card expenses paid by the Farm Partnership.

¶54 **5. Did the District Court err in not requiring Otto to reimburse the Farm Partnership for the cost of two vehicles both Otto and his wife used?**

¶55 William argues that the District Court erred in ordering the proceeds from the sale of the Cadillac DeVille and the Suburban be divided equally between he and Otto. William contends that Otto's use of both vehicles constituted a conversion of both vehicles. Thus, he argues that the measure of damages for each conversion is the value of each vehicle at the time of the conversion forward, plus interest, under § 27-1-320(1), MCA.

¶56 Otto argues that the District Court properly characterized the vehicles as Farm Partnership assets, since both vehicles were not personally titled to Otto or his wife, both vehicles were shown as partnership assets, and both vehicles were included on the Farm

14

Partnership's property list.

¶57    Partnership property is defined as property that is acquired by the partnership either (1) in the name of the partnership, or (2) in the name of one or more of the partners with an indication that the title of the property is transferred to the partnership. Section 35-10-203(2)(a)-(b), MCA. Further, property is presumed to be partnership property if it is purchased with partnership assets, although not purchased in the name of the partnership. Section 35-10-203(4), MCA. However, property is presumed separate from partnership property if it is purchased in the name of one or more of the partners without an indication that title is transferred to the partnership and it was not purchased with partnership assets. Section 35-10-203(5), MCA. We held in *In re Estate of Bolinger*, that the question of whether property belongs to a partnership depends on the intent of the partners. *In re Estate of Bolinger*, ¶ 81. Such intent may be inferred from a variety of sources, such as an agreement between the partners or by the partners' conduct. *In re Estate of Bolinger*, ¶ 81.

¶58    Here, the District Court found that the vehicles were titled personally to Otto and his wife. However, Otto's wife frequently used the vehicles to run errands for the Farm Partnership, and both vehicles were listed as assets of the Farm Partnership, as they were considered property of the Farm Partnership.

¶59    Under their Partial Settlement Agreement, William and Otto agreed that all property would be divided equally between them, subject, of course, to their respective claims. Because both vehicles were listed as Farm Partnership assets, we hold that the District Court did not err in ordering the vehicles sold and the proceeds of the sales divided equally.

15

**¶60  6. Did the District Court err in finding that it did not have jurisdiction to determine the liability between William and Otto regarding the amounts claimed due by Otto's sons?**

¶61    The District Court found that because William did not bring a claim against G&G, it could not making findings of fact and conclusions of law regarding the amounts claimed due by Otto's sons, Gary and Greg.  We agree.

¶62    As we held in *Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 879 P.2d 715, a person who is not a party to an action, cannot be a party to the judgment of that action. *Warnack*, 266 Mont. at 207, 879 P.2d at 718.  We noted that "[i]t is a fundamental principle of our jurisprudence that it is only against a party to the action that a judgment can be taken and that the judgment is not binding against a stranger to the action."  *Warnack*, 266 Mont. at 207, 879 P.2d at 718.  This fundamental principle, we held, underlies § 25-9-201, MCA, which states:

> Subject to the provisions of Rule 54(b), M.R.Civ.P., judgment may be given for or against one or more of several plaintiffs and for or against one or more of several defendants, and it may, when the justice of the case requires, determine the ultimate rights of the parties on each side as between themselves.

¶63 Here, the plaintiff in the case is William and the defendant is Otto. They are the only two parties to this instant action. While Gary and Greg claim monies are owed to them, they are not parties to this action, and, therefore, cannot be parties to the judgment. Thus, we hold that the District Court did not err in reaching that conclusion.

¶64 **7. Did the District Court err in not awarding William prejudgment interest on the $94,607 judgment and on the excess compensation taken by Otto from the various businesses both William and Otto owned?**

¶65 William argues that he is entitled to prejudgment interest under § 27-1-211, MCA, because the interest is ascertainable, and under § 27-1-212, MCA, because a district court may award such interest per its discretionary powers. Thus, William contends that the District Court erred in finding that no evidence of any agreement awarding him such interest existed, because the interest is statutorily his.

¶66 Otto argues that the District Court properly found that it would not be a "simple project . . . to go back and try and calculate interest from the time every advance was made or a draw taken or a loan made by a business to one of the parties." Otto maintains that the District Court was correct in finding that when the difference in compensation between he and Otto were determined and fixed, only then should interest accrue.

¶67 We have held that an award of prejudgment interest under § 27-1-211, MCA, is permitted when three criteria are met. These three criteria include: (1) the existence of an underlying monetary obligation; (2) the amount of recovery is certain or capable of being made certain by calculation; and (3) the right to recovery vests on a particular day. *Tipp v. Skjelset*, 1998 MT 263, ¶ 13, 291 Mont. 288, ¶ 13, 967 P.2d 787, ¶ 13. The legislative intent

17

behind § 27-1-211, MCA, states that the statute "is merely part of the law of damages that has, as its objective, that of making the injured person whole." *Price Bldg. Service, Inc. v. Holms* (1985), 214 Mont. 456, 468, 693 P.2d 553, 559.

¶68 Important to the granting of prejudgment interest is whether the amount due is determinable before or after trial. *See Heitz v. Heitz* (1990), 244 Mont. 12, 16, 795 P.2d 486, 489 (holding prejudgment interest not ascertainable where the amount owed to one partner was only determined after trial and where it was not certain for which months the partner was entitled to grazing fees until after the District Court entered its order); *Maddux v. Bunch* (1990), 241 Mont. 61, 67, 784 P.2d 936, 940 (holding prejudgment interest "clearly" not ascertainable where plaintiff claimed a loss of $35,614.08 and the jury awarded $23,378.95); *Castillo v. Franks* (1984), 213 Mont. 232, 244, 690 P.2d 425, 431 (holding award of prejudgment interest improper where the damages for the loss of hay crops was uncertain until the District Court made its determination regarding amount).

¶69 Section 27-1-212, MCA, however, is discretionary and does not require compliance with the above-three criteria. An award of prejudgment interest under § 27-1-212, MCA, also does not require certainty of damages, nor must a person's right to receive a sum certain in damages vest before judgment, *Dew v. Dower* (1993), 258 Mont. 114, 127, 852 P.2d 549, 556-57.

¶70     Here, the District Court did not award William prejudgment interest on the $94,607 found owed to him or on the excess compensation taken by Otto, also owed to William. In its finding, the District Court noted that such an award would be difficult to calculate until the differences in compensation were determined. We agree.

¶71     The District Court received much testimony about the Westland project, which was a major contention between both William and Otto. Additional testimony targeted the excess compensation Otto paid himself. Based on all of the testimony received, the District Court determined that William had received $1,803,170 and Otto had received $2,045,115. It was not until the District Court determined what compensation Otto and William had each received, that it would then evaluate any discrepancies in the total amounts. Hence, as in *Heitz* and *Castillo*, the amounts owed to Otto and William were not ascertainable until the District Court heard all of the evidence and made its determination regarding who was entitled to certain property. We hold that the District Court did not err in not awarding prejudgment interest under § 27-1-211, MCA.

¶72     In addition, the District Court did not err in not awarding prejudgment interest under § 27-1-212, MCA, because, as that statute states, such an award is in the discretion of the District Court as the trier of fact. Here, the District Court, in its discretion, determined that prejudgment interest should not be awarded. A District Court is in a unique position to weigh the evidence. We will not disturb a District Court's exercise of its discretion absent an abuse of that discretion, and we hold on this issue that the District Court did not abuse its discretion.

19

¶73 **8. Did the District Court err in not considering the tax implications on William regarding his withdrawals from the Farm Partnership when the District Court determined how both William and Otto's interests should be equalized?**

¶74 William argues that the District Court erred in not accounting for the tax implications for his loans from Baltrusch Construction. He argues that the tax treatment for the loans is different than that which was applied to the withdrawals against capital that Otto made. Without accounting for these tax differences, William contends that he will receive less money when the property interests are equalized.

¶75 Otto argues that since William took money from the Farm Partnership as loans, and not wages, he initially benefitted by not recognizing the loan proceeds as income. Otto contends that by now accounting for the tax implications of William's loans, in effect, Otto would be paying one-half of William's income tax obligation which William alone is obligated to pay.

¶76 Had William taken his loans as wages, he would have immediately recognized that gain as income during each applicable tax year. Thus, he would have paid taxes on those wages immediately. By taking his money as loans, he did not immediately recognize the money as income. It is not Otto's obligation to pay one-half of the loan amount, as William himself charged the money he took to his officer loan account with Baltrusch Construction. Neither party cited any authority in connection with their arguments on this issue. We are not persuaded that the District Court's ruling was incorrect. Therefore, we hold that the District Court did not err in so holding.

¶77    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM REGNIER